**Frank J. CROSBY, individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**BOWATER INCORPORATED RETIREMENT PLAN FOR SALARIED EMPLOYEES OF GREAT NORTHERN PAPER, INC., and Bowater Incorporated, Defendants.**

No. 1:01–CV–683.

United States District Court,
W.D. Michigan,
Southern Division.

May 20, 2003.

Eva T. Cantarella, Hertz, Schram & Saretsky, PC, Bloomfield Hills, MI, for plaintiff.

Scott R. Sikkenga, Miller, Canfield, Paddock and Stone, Kalamazoo, MI, for defendants.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on Plaintiff Frank J. Crosby's Motion for Costs and Attorney Fees. Defendants Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern Paper, Inc. and Bowater Incorporated have opposed the Motion. The Motion has been fully and extensively briefed and the Court finds that further briefing or argument is unnecessary to resolve the Motion. For the reasons which follow, the Motion will be granted in part and denied in part.

## BACKGROUND

This action was brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). On November 26, 2002, after very extensive legal briefing by the parties, this Court granted class certification, granted summary judgment in favor of Plaintiff, and awarded the Plaintiff class most of the equitable relief requested by Plaintiff's attorneys. On December 10, 2002, Plaintiff filed an Unopposed Motion for Enlargement of Time to File Motions for Costs and Attorney Fees. The Motion for Enlargement was later granted and Plaintiff then submitted its timely Motion for Costs and Attorney Fees for filing on January 7, 2003 consistent with the enlargement granted.[1]

Plaintiff's Motion for Costs and Attorney Fees seeks $270,640.00 of attorney fees through January 6, 2003, costs in the amount of $4,973.12 through January 6, 2003, and an unspecified amount of attorney fees and costs incurred after January 6, 2003. The attorney fees sought are based on the following lodestar calculations: $3,465.00 for Bradley J. Schram (7.70 hours times $450/hour); $29,707.50 for Robert P. Geller (69.90 hours times $425/hour); $5,925.00 for Bradford Yaker (15.80 hours times $375/hour); and $231,542.50 for Eva Cantarella (661.55 hours times $350/hour).

Plaintiff has documented his costs and attorney services through thorough attorney billing records (Plaintiff's Ex. 56) and affidavits for each of the attorneys (Plaintiff's Exs. 52–55.) The affidavits also detail the legal experience of each of the billing attorneys.

Attorney Bradley Schram is a graduate of Georgetown Law School and a former Assistant Prosecuting Attorney for Wayne County. (Plaintiff's Ex. 52.) He founded the law firm of Hertz and Schram (now Hertz, Schram & Saretsky, P.C.) in 1979. (*Id.*) His legal experience includes lecturing at both University of Detroit School of Law and Wayne State University Law School on professional responsibility in litigation. (*Id.*) It also includes work on some eight federal ERISA class actions and numerous other security class actions. (*Id.*) His legal work in this case, according to the billing records, consists mostly of conferences with Eva Cantarella and Robert Geller concerning case strategy, and revisions of key documents, such as the Complaint. (*See* Plaintiff's Ex. 56.)

Robert Geller is a graduate of the Boston University School of Law and a former attorney for the United States Agency for

---

1. On January 7, 2003, the Motion for Costs and Attorney Fees was submitted for filing together with an Unopposed Motion to File Excess Pages—in order to comply with Local Civil Rule 7. The lengthy brief was approved by Order of January 13, 2003 and the Motion for Costs and Attorney Fees was then entered on the docket on January 13, 2003.

International Development (where he worked in Mogadishu, Somalia negotiating government contracts). (Plaintiff's Ex. 53.) He returned to private practice in 1986. (*Id.*) He has at least eight years of experience in litigating ERISA class actions and has litigated or supervised eight federal ERISA class actions filed by his firm. (*Id.*) He also has significant experience in many other securities class actions and non-ERISA class actions filed throughout the country and is a member in good standing of the bar of the United States Supreme Court. (*Id.*) It appears from the firm billing records that his work in this case has consisted mostly of consulting with firm members about strategic litigation decisions and reviewing key documents, such as the Complaint. (*Id.*)

Bradford Yaker is a 1988 graduate of Wayne State University Law School and a partner of Hertz, Schram & Saretsky, P.C. (Plaintiff's Ex. 54.) Prior to joining the firm, he was a partner of the Chicago law firm of Keck, Mahin and Cate. (*Id.*) He has seven years experience litigating ERISA class actions and has prosecuted eight federal ERISA class actions in that time. (*Id.*) He also has extensive experience prosecuting other class actions involving securities, accounting malpractice, and consumer protection issues. (*Id.*) According to his Affidavit and the billing records, his involvement in this case has consisted of researching class certification issues and preparing pleadings in support of class certification. (Plaintiff's Ex. 54 & 56.)

Eva Cantarella is a 1994 graduate of Wayne State University Law School and a former member of the *Wayne State Law Review.* (Plaintiff's Ex. 55.) Prior to law school, she owned and operated an ap-

praisal services company which performed income property appraisals for financial institutions. (*Id.*) In 1994 and 1995, she worked for the firm of Pepper Hamilton & Sheetz in the practice of litigation. (*Id.*) In 1995, she began work as a litigation associate for Hertz, Schram & Saretsky, P.C. and, in that capacity, has worked on seven federal ERISA class actions. (*Id.*) She is a member in good standing of the bars of the Sixth Circuit Court of Appeals and the United States Supreme Court, and is a frequent lecturer on ERISA and employee benefits law. (*Id.*) The law firm billing records detail that she has done the lion's share of the litigation work in this matter, including conducting client contacts, reviewing evidence, researching legal issues, drafting legal documents including the Complaint, numerous motions, briefs, and proposed orders, and conferring with co-counsel regarding strategic litigation decisions. (Plaintiff's Ex. 56.)

Costs sought by Plaintiff includes court fees, charges for Westlaw and other electronic searches, delivery charges, mileage, parking fees and other miscellaneous small disbursements as detailed on the final page of the law firm billing records. (Plaintiff's Ex. 56.) These costs total $4,973.12. (*Id.*) The greatest percentage of these costs are for copying ($3,074.80).[2] (*Id.*)

Defendants have opposed the award of any attorney fees under ERISA given their analysis of the factors pertinent to such an award. They have also opposed the attorney fee rates charged by each of Plaintiff's attorneys as excessive. They have also opposed much of the attorney services billed by Plaintiff's attorneys as unnecessary and/or excessive[3] and in one

---

2. The need for such copying is obvious from the docket, given the lengthy briefings and other papers submitted in this case and presumably copied to many persons involved in the case.

3. Defendants' objections to particular hours are stated both in their Brief in Opposition, at pages 15–19, and in attached Charts/Exs. 4–9.

case, a dual billing for the same 1.25 hours on December 21, 2002, as an outright mistake. They have also opposed the costs as excessive and maintain that some of the items of disbursements (and particularly legal research charges) should not be allowed since they are considered as part of attorney overhead and not a recoverable cost. Plaintiff contests each of the arguments made by Defendants (with the exception of the double billing of 1.25 hours on December 21, 2002, which is conceded to be a billing mistake).

The parties' briefing also focuses attention on past statements made by the attorneys. During a motion hearing on March 12, 2002, Magistrate Judge Ellen S. Carmody asked, "If plaintiff were to prevail, I assume he would be entitled to attorneys fees under ERISA?" Defense counsel Thomas Piskorski responded: "Yes. There is a fee-shifting provision in ERISA, your honor, that is correct." Plaintiff regards this an admission that attorney fees should be awarded if Plaintiff prevailed. Defendants regard the statements only as an admission that the ERISA statute allows attorney fees in some cases, but not an admission that an award is proper in this case.

Defendants also argue that Plaintiff has "basically conceded" that Defendants' legal position in this case was taken in good faith. (Brief in Opposition, at 5.) This argument is based on statements on pages five through seven of Plaintiff's Memorandum of Law. As pointed out by Plaintiff, though, this is a curious argument since the statements made on those pages argue that Defendants were culpable for ignoring expert actuarial opinions.

## LEGAL ANALYSIS

### A. Legal Standards

■ Section 502 of ERISA, 29 U.S.C. § 1132, provides that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a partici-

pant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This language has been interpreted by the Sixth Circuit as granting "substantial discretion" to the district court to grant or deny a request for attorney fees in an ERISA action. *Jordan v. Michigan Conf. of Teamsters Welfare Fund,* 207 F.3d 854, 860 (6th Cir.2000); *see Schwartz v. Gregori M.D.,* 160 F.3d 1116, 1119 (6th Cir.1998). Before exercising this discretion under a fee-shifting statute, the district court is required to examine five factors:

1. The degree of the opposing party's culpability or bad faith;

2. The opposing party's ability to satisfy an award of attorney fees;

3. The deterrent effect of an award on other persons under similar circumstances;

4. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

5. The relative merits of the parties' positions.

*Schwartz,* 160 F.3d at 1119 (quoting *Sec. of Dept. of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985)). The *King* factors are a useful tool in analyzing fee requests, but should be used flexibly by the district courts; no single factor is necessary or dispositive. *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 558 (6th Cir. 1987).

■ If an analysis of the *King* factors dictates an award of attorney fees, then attorney fees are calculated using the "lodestar" method of calculation, *i.e.,* determining a reasonable fee based on a reasonable hourly rate and a reasonable

number of hours of service. The lodestar method was aptly explained by the United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (*en banc*) (emphasis in original).

*Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933.

Reasonable hourly rates under *Hensley* mean the customary local attorney fee rates for attorneys of comparable experience and expertise with one notable exception. *See Hadix v. Johnson,* 65 F.3d 532,

536 (6th Cir.1995). The notable exception is that certain cases, by their content and character, require the employment of "out-of-town specialists" to perform services not regularly performed by local attorneys. *Id.* Regarding such specialists, the Sixth Circuit has said:

> When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir.1982); *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983). A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate. *Chrapliwy,* 670 F.2d at 769.

*Id.* at 535.

■■■ Adjudication of the lodestar fee does not end the fee analysis mandated by the Supreme Court. While there is a "strong presumption" that the lodestar represents a reasonable fee, pertinent circumstances may warrant an adjustment of the fee either upward or downward. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401–02 (6th Cir.1995). A list of many of the factors pertinent to setting the lodestar fee and adjusting the fee was specified long ago by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). The *Johnson* factors have now become part of the settled law of lodestar analysis under both Supreme Court and Sixth Circuit decisions. These factors include:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron,* 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (citing *Johnson* ); *see also Paschal v. Flagstar Bank,* 297 F.3d 431, 434–35 (6th Cir.2002). Like the *King* factors, the *Johnson* factors are a "useful catalog" to consider when exercising statutory discretion. *Paschal,* 297 F.3d at 435. They are not die-hard requirements to be met.

■ Of course, as the Supreme Court has stated not once, but repeatedly, the resolution of a motion for attorney fees under a fee-shifting statute should not become a "second major litigation" itself. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 609, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933 and *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1988)). For this reason, the Sixth Circuit has determined that the district court should have substantial discretion in determining whether to conduct an evidentiary hearing on attorney fee motions. *Bldg. Serv. Local 47,* 46 F.3d at 1402. Consistent with this discretion, the Sixth Circuit only requires an evidentiary hearing on an attorney fee dispute when an evidentiary hearing is timely requested and when the district court is unable to resolve material factual disputes based on the affidavits and written documentation submitted. *Id.* (citing authorities). In this case, an evidentiary hearing has not been requested. Moreover, even had it been requested, it would have been denied because the disputes between the parties can be readily resolved based on the written materials submitted.

## B. Entitlement to Fees and Costs

■ As explained above, the Court must assess under the *King* factors, and other pertinent information, whether to award attorney fees and costs. Plaintiff's argument that the Defendants should be deemed to have admitted the entitlement misses the mark. The question by Magistrate Judge Carmody was designed to elicit whether there was a fee-shifting statute, not an entitlement to fees. Thus, the Court reads the answer, consistent with Defendants' explanation, as only a confirmation of the pertinency of the statute. Likewise, Defendants' argument that Plaintiff's brief "basically concedes" the "good faith" nature of the defense is mistaken. The whole of Plaintiff's statements, when read in context, dispute the reasonableness of Defendants' positions in this case.

In terms of the *King* factors, the Court first finds that Defendants exercised a sufficiently high degree of fault so as to be judged "culpable." This finding is based on the fact that Defendants' position contradicts most, if not all, learned actuaries (including Defendants' own actuary, Hewitt Associates) who have studied this issue and counseled against the use of a pre-mortality decrement in this context. From this standpoint, Defendants' position was more than slightly unreasonable. This is true despite that there was no binding precedent in the Sixth Circuit. The absence of precedent, though a brute

fact, will not excuse the taking of positions which on their face are unreasonable and can be defended only by a sophist's resort to linguistic sleight-of-hand.

Furthermore, as argued by Plaintiff, Defendants took other positions in this suit, especially on class certification, which were not even remotely reasonable. Defendants originally contended [4] that Plaintiff did not meet the numerosity requirement for the class because it was not sufficiently shown that more than a small number of class members would elect to receive pension benefits in a lump sum. At the time, such a contention was known or should have been known to be false simply because empirical studies of pension plan participants have shown (as one would expect) that they usually take their benefits in a lump sum. Since the resolution of the class certification issue, Defendants in answering discovery requests have admitted that 463 out of 473 known pensioners have taken their benefits in a lump sum as opposed to an annuity. Thus, in the Court's judgment, Plaintiff has shown sufficient culpability on behalf of Defendants, both as to the positions taken in advance of litigation and in litigation.

As for the second *King* factor, Defendants have expressly admitted that they have funds sufficient to pay attorney fees. Therefore, the Court finds consistent with this concession.

As for the third *King* factor, the deterrent effect of an attorney fee award warrants an award of attorney fees. Without this deterrent effect, plan trustees might opt to use the improper discount in hopes of not being caught (especially since this is a highly technical matter which is not apparent to pensioners, with the exception of actuaries experienced in pension administration). The award also is important for the purpose of fairly compensating the class. Without the award, the class members' legitimate expectations of complete pension benefits (without the improper decrement) would be unnecessarily frustrated by the payment of the attorney fees themselves.

As for the fourth *King* factor, since this is a class action affecting nearly all pensioners of the Defendant pension fund and the Plaintiff has sought and secured a common benefit for those pensioners, it is very apparent that this case was pursued to secure a common benefit for a large number of class members. It is also apparent since Defendants have attempted to justify their conduct based on a lack of binding case precedent that the resolution of this question is important both for the pensioners affected and the pensioners of any other plans following similar practices. Therefore, the Court determines that both the common benefits sought and the significance of the legal question favor an award of attorney fees.

As for the fifth *King* factor, in terms of the relative merits of the parties' position, as reflected in the Court's Opinion of November 26, 2002, this factor clearly favors Plaintiff. Additionally, the Court notes that since its ruling, the Treasury Department has also proposed regulations which will direct the computation of pension compensation for cash balance plans without the offending decrement. *See* Proposed Rules, Department of Treasury, Reductions of Accruals and Allocations because of the Attainment of any Age; Application of Nondiscrimination Cross–Testing Rules to Cash Balance Plans, 67 Fed.Reg. 76123, 76133 ex. 5 (Dec. 11, 2002).

Accordingly, the Court determines that all *King* factors favor the award of attor-

---

4. Defendants abandoned this contention after being confronted with their own statement to the Internal Revenue Service and the Department of Labor that they assumed that all participants would take benefits in the form of a lump sum.

ney fees. As such, attorney fees will be awarded to Plaintiff's counsel.

### C. Calculation of Lodestar Amount

#### 1. Reasonable Attorney Rates

■ Defendants first argue in their briefing that Plaintiff has failed to justify the rates sought, citing to this Court's earlier decisions in *Holford v. Exhibit Design Consultants*, 218 F.Supp.2d 901, 910 (W.D.Mich.2002) and *Swans v. City of Lansing*, 65 F.Supp.2d 625, 647 (W.D.Mich.1998). Both of those decisions significantly reduced attorney fee rates and fees based on the Sixth Circuit's holding in *Hadix*, 65 F.3d at 535, described above.

As argued by Plaintiff, this comparison ignores the pertinent facts of both this case and the cited cases. *Holford* was a very simple *ERISA* claim (failure to provide a mandated notice) which could have been easily prosecuted by cheaper local counsel. *Swans* was a civil rights brutality case typical of many other cases filed by local attorneys. In neither of those cases was there any need to employ either high priced local counsel or an out-of-town specialist to perform the duties of the plaintiff counsel.

In this case, in contrast, the suit involves a highly technical ERISA claim based on the nature of actuarial assumptions made in computing pension benefits. Defendants themselves employed out-of-town specialists (the Chicago law firm of Seyfarth Shaw) to defend the action. While there are a small number of attorneys in the Western District of Michigan with some expertise in this area, in the Court's experience, these attorneys all work on behalf of employers and pension plans.[5] None of these attorneys, in the Court's

experience, has any experience or expertise in prosecuting actions on behalf of plaintiffs and none has any experience in prosecuting class actions. Therefore, appointment of "out-of-town specialists" was necessary in this case because local attorneys were not available to provide the necessary services. The type of speciality services needed in this case are provided only by a small number of specialty law firms which, almost exclusively, are located in large metropolitan areas. Plaintiff's attorneys are an example of such a firm.

■ Defendants have also argued that Plaintiff's counsel should be limited to the rate of $220 per hour. Defendants justify this rate based on related arguments. One of these arguments is that Plaintiff's attorneys' billing rates for hourly clients are in fact lower than the rates requested. Another related argument is that the $220/hour rate was determined as the appropriate rate by the Northern District of Illinois as to the same attorneys in the ERISA case of *White v. Employee Ret. Plan of Amoco Corp.*, 2001 WL 1204193 (N.D.Ill. Oct. 10, 2001).

Plaintiff's attorneys do not disagree that their hourly rates for corporate clients are lower. However, they argue that those rates (whatever they are) are irrelevant because the services provided are of an essentially different character, *i.e.*, those services involve simple advice on individual corporate decisions, they do not involve the issues at interest in this suit, and they do not involve the prosecution of plaintiff class claims. The Court finds this reasoning persuasive and will not limit Plaintiff's billing rate by use of an artificially lower rate which is not pertinent to the services at issue.

---

5. I was appointed to the bench in 1979. Before that, I began my legal practice in Western Michigan in 1958 and am well familiar with the firms and attorneys practicing in Western Michigan by virtue of long experience.

As for the rate chosen in *White*, Plaintiff's attorneys characterize this rate as of minimal importance because *White* was decided on a common fund theory of recovery as opposed to a lodestar analysis. Moreover, Plaintiff's attorneys also argue that the use of the *White* rate would be greatly unfair given the substantial inflation of attorney costs/fees which have occurred between the time services were rendered in *White* and the time services are to be rendered in this case. The Court concurs with both of these arguments and, therefore, will not artificially limit Plaintiff's attorney fees to the rates awarded in *White*.

As for the *Johnson* factors, the Court will address each of the *Johnson* factors through separate findings.

First, substantial time and attorney services were necessary to prosecute this case. As with all class actions, this case involved substantial effort in identifying class members and following the procedures under Rule 23 for the certification of the class. As with all complicated cases driven by actuarial issues, this case involved complex and technically skilled work in addressing the actuarial issue. As with all major ERISA litigation, this case involved detailed argument about the pertinent statutory authority for the relief sought. For all of these reasons, the Court finds generally that the time and labor expended by Plaintiff's attorneys were wholly necessary.

Second, for the reasons explained above, this case is best described as a highly difficult and novel case.

Third, for the reasons given above, this case necessitated an extremely high-level of attorney skill (*i.e.*, within the top five percent of the national bar), which services were ably provided by Plaintiff's counsel.

Fourth, consistent with the statements of .Plaintiff's counsel, the appearance of Plaintiff's counsel in this case precluded Plaintiff's counsel from engaging in other lucrative work.

Fifth, the customary fees for such work are best represented by the hourly rates for high-quality, major-metropolitan defense firms who regularly defend these kinds of cases (simply because the relevant plaintiff firms work on a contingency basis and not on an hourly-fee basis). The rate for eight-year associates of those firms (*i.e.*, persons with "comparable experience" to attorney Cantarella) are between $300 to $400 per hour. Therefore, the Court will select the rate of $300/hour as the appropriate rate for attorney Cantarella. The rate for partners of those firms are between $300 to $600 per hour depending on the firm, the experience and the services rendered. Therefore, the Court selects the rates of $325/hour for attorney Yaker, $375/hour for attorney Geller, and $400/hour for attorney Schram as appropriate rates for their experience and expertise. While these rates are less than those requested by Plaintiff, they are adequate to fairly compensate Plaintiff's counsel.

Sixth, Plaintiff's took this case on a contingent fee basis. Therefore, the contingency serves to justify the high fees discussed above.

Seventh, this case did not involve unusual time limitations.

Eighth, this case involves an estimated $2.7 million dollars, according to Defendants' last estimate. Therefore, the amounts at stake are sufficient to justify excellent representation at the rates described above.

Ninth, Plaintiff's attorneys have excellent experience, reputations and abilities, as proven not only by their work in this case, but in many other federal class actions. Therefore, this factor supports the rates discussed above.

Tenth, while this case was desirable from the aspect that the legal claims were likely to succeed, the lack of a controlling precedent made the case more difficult for Plaintiff. Therefore, the Court considers this a mixed factor which does not greatly impact on the fee analysis.

Eleventh, Plaintiff and Plaintiff's counsel had no relationship prior to this suit. Their relationship is confined to representation in this suit. This factor does not significantly affect the analysis of either fees or rates.

Twelfth, awards in similar cases support the rates described above. Plaintiff has composed a chart of similar cases in which high rates were awarded (Chart B). The chart supports the rates described above, notwithstanding the fact that Plaintiff's attorneys themselves have not always been awarded such high rates (as in the *White* case). The other "comparable" cases cited by Defendants are not comparable and do not bear on the appropriate rates for this case.

Therefore, for the reasons given, the Court will award rates of $300/hour for attorney Cantarella, $325/hour for attorney Yaker, $375/hour for attorney Geller, and $400/hour for attorney Schram.

2. Reasonable Hours of Service

■ As stated above, the Court generally agrees that the total amount of attorney hours claimed was reasonably necessary given the legal tasks incumbent upon class counsel and given the serious opposition made by defense counsel. With this said, however, the Court will also address the particular objections made by Defendants to hours of service by Plaintiff's counsel.

It is conceded by Plaintiff's counsel that Plaintiff's counsel erroneously twice billed 1.25 hours for memorandum preparation by attorney Cantarella on December 21, 2002. Therefore, the second 1.25 hours will be stricken as mistaken.

Defendants have challenged the total hours billed as excessive on the ground that the legal issues in this case largely overlapped with those in another of Plaintiff's cases (*Lyons v. Georgia–Pacific Corp.*, 196 F.Supp.2d 1260 (N.D.Ga.2002) (unpublished)). In fact, Defendants have attached copies of underscored briefing for the purpose of showing that briefing done in this case was, in some instances, "recycled" from *Lyons*. Of course, this Court is not interested in the exact process used to create briefing, whether it be recycling or creation *ab initio et ex nihilo*. The Court is interested, however, in carefully regarding the billing of hours on briefing to determine whether the hours billed were excessive in light of the services provided. In assessing this, the Court does take into account that the repetition of briefing previously completed is not an arduous task. While this is plain, it is also plain that the facts of each and every ERISA case involving distinct plans are distinct. Therefore, even when briefing can be recycled, its recycling still involves significant numbers of attorney hours to tailor it and to ensure that the recycled briefing is factually accurate and legally pertinent to the circumstances of the present law suit. For those reasons, the Court finds that the hours billed by Plaintiff's attorneys for completing briefing in this matter were not overstated.

In making the above finding, the Court also finds that the briefing was of a very high quality and greatly assisted in the resolution of the case. For the same reasons, the Court finds that the hours spent on the various briefs submitted were not overstated. These findings are consistent with the directions of the Sixth Circuit and Second Circuit in the cases of *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169,

1177 (6th Cir.1990) and *Grant v. Martinez,* 973 F.2d 96, 99 (2nd Cir.1992). Those cases make clear that in assessing attorney fees, the district court should assess whether the hours of service were deemed necessary at the time they were performed. The district court should not engage in an *"ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Grant,* 973 F.2d at 99 (citing *Wooldridge* ). "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* Defendants' criticisms suffer inappropriate *ex post facto* thinking. The many hours expended in briefing were necessary because a reasonable attorney would have engaged in similar time expenditures at the time.

Defendants have also objected to the number of hours billed in seeking attorney fees. Plaintiff has billed as much as 108.30 hours in the process of seeking attorney fees and costs. (*See* Plaintiff's Reply, at 23 n. 8; Defendants' Ex. 9, Chart F.) This is very large considering that Plaintiff only billed 636.1 hours in obtaining the relief ordered. The Sixth Circuit in *Coulter v. Tennessee,* 805 F.2d 146, 151 (6th Cir.1986) announced a general rule that attorney fee hours in seeking attorney fees in lodestar cases are allowed, but only up to 3 percent of the total hours billed in obtaining relief. To the contrary, Plaintiff argues that this rule should be limited to civil rights cases, such as *Coulter,* and not be applied outside that context. This interpretation of *Coulter* is unduly limiting because the rationale in *Coulter* applies equally to attorney fee petitions filed under statutes other than 42 U.S.C. § 1983. Therefore, the Court will reduce these hours to the three-percent limit or 19.1 hours. The Court will do so by reducing attorney Geller's 8.3 hours on attorney fee issues to 2.5 hours and reduc-

ing attorney Cantarella's 100 hours on attorney fee issues to 16.6 hours.

Defendants have objected to the hours billed by attorney Schram, which were mostly consulting hours. Defendants argue that Schram served only as the overseer of an overseer (referring to attorney Geller's supervision). Defendants' argument overlooks the value served by office consultations between junior and senior attorneys. These kind of office consultations alert less experienced attorneys to litigation pitfalls and save both the federal courts and many parties avoidable legal problems and the unnecessary expenditure of resources. They also ensure (as argued by Plaintiff) that technical arguments are appropriately "packaged" so as to be readable by non-actuaries, including judges of the federal courts. While in this case two senior attorneys were involved with oversight and consultation, their hours were relatively modest in light of the services rendered. In particular, attorney Schram billed only 7.7 hours. Such hours were an appropriate exercise of billing judgment and should not be stricken as unnecessary. *See Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933; *see also Rodriguez ex rel. Kelly v. McLoughlin,* 84 F.Supp.2d 417, 426 (S.D.N.Y.1999) (permitting attorney fees for office conferences by multiple attorneys); *Meriwether v. Coughlin,* 727 F.Supp. 823, 826–27 (S.D.N.Y.1989) (approving similar attorney fee billings).

Defendants further maintain that 23 hours spent by attorney Cantarella in traveling to the Society of Actuaries and in researching actuarial issues there was unnecessary. Defendants suggest that attorney Cantarella could have simply called the Society and had relevant documents shipped to her office, thereby avoiding the travel. As explained by attorney Cantarella, her travel was necessitated by the fact that the Society does not conveniently

catalogue all its materials and does not identify requested materials during telephone inquiries (which attorney Cantarella first tried before traveling to the Society). The information learned was very pertinent and the travel at issue was wholly justified. Therefore, Defendants' argument on this point is emphatically rejected.

To summarize, Plaintiff's counsel will be allowed the following hours of service as time reasonably expended in this litigation: 576.9 hours for attorney Cantarella; 64.1 hours for attorney Geller; 7.7 hours for attorney Schram; and 15.80 hours for attorney Yaker. The Court regards those hours when multiplied by the allowable rates described above as a proper lodestar fee for Plaintiff's attorneys. According to the Court's calculations, this results in lodestar fees of: $173,070 for attorney Cantarella; $24,037.50 for attorney Geller; $5,135 for attorney Yaker; $3,080 for attorney Schram; and a total lodestar attorney fee of $205,322.50.

While the Court will allow such hours of service, the Court rejects Plaintiff's suggestion (on page 27 of their Memorandum of Law in Support) to allow later billed fees based on subsequent verification of those hours by Plaintiff's attorneys without review by the Court. Due process does not permit the writing of such a blank check because such amounts (even if proper) would not be subject to legitimate challenge by Defendants and would not be independently reviewed and assessed by the District Court as required by section 502 of ERISA. *See also United States v. Bowers,* 828 F.2d 1169, 1175 (6th Cir.1987) (warning about the writing of a judicial "blank check"). Therefore, this latter request by Plaintiff is rejected.

**D. Costs**

■ Defendants have also contested that the $4,973.12 sought by Plaintiff are not allowable costs, with the exception of the filing fee, which is conceded. Defendants argue that Plaintiff has not sufficiently documented the costs incurred. To address this concern, Plaintiff has filed an updated statement of costs (Ex. 65) which documents that telephone charges, copying, delivery charges, *et cetera* were made in connection with court filings in this case. Even without this documentation, the Court would be inclined to grant all such costs since exactly those kinds of costs are routine and expected costs of maintaining representation in this kind of suit. Based on the material submitted, the Court finds that the costs have been sufficiently documented by Plaintiff and were reasonably and necessarily incurred in this litigation.

■ Defendants have also objected to Westlaw charges, citing unpublished decisions which hold that Westlaw charges should not be allowed. Plaintiff has responded by citing to decisions by the Third, Seventh, Tenth and D.C. Circuits allowing on-line charges as reasonable costs. *See, e.g., Continental Illinois Securities Litigation,* 962 F.2d 566, 570 (7th Cir.1992); *Case v. Johnson County, Kansas,* 157 F.3d 1243, 1258 (10th Cir.1998). The logic of those cases is irrefutable. They treat Westlaw charges, like paralegal expenses, as an expense which is routinely billed to clients and which is necessary and proper in the studied practice of law. A contrary rule would only discourage the use of on-line research and would make the legal practice both more costly and less effectual. Therefore, these charges will be allowed as proper costs. In reaching this ruling, the Court also relies on the Sixth Circuit's decision in *Northcross v. Bd. of Educ.,* 611 F.2d 624, 638–39 (6th Cir.1980), which allowed costs, including paralegal fees, as part of reasonable attorney fees because such costs are routinely charged by attorneys as part of their effective practice of law.

As such, Defendants' objections to costs are wholly overruled.

### CONCLUSION

For the reasons given, an Order shall enter awarding attorney fees and costs in the amount of $210,295.62 in favor of Plaintiff and against Defendants.