*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

WEATHERSTONE CONDOMINIUM
ASSOCIATION,

UNPUBLISHED
February 27, 2020

Plaintiff-Appellee,

v

No. 345558
Washtenaw Circuit Court
LC No. 17-001169-CH

VASILIOS STOITSIADES and CHRISTINE
STOITSIADES,

Defendants-Appellants.

---

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

In this action for injunctive relief under the Michigan Condominium Act, MCL 559.101 *et seq*, defendants appeal as of right the trial court's grant of summary disposition to plaintiff. We affirm.

## I. BACKGROUND

Plaintiff is a condominium association representing co-owners of units in the Weatherstone Condominium development located in Ann Arbor. In August 2013, defendants purchased a single unit in the development, which they leased to a tenant from September 1, 2013 until August 31, 2015. The parties dispute whether plaintiff had any bylaws, rules, or other governing documents regulating a co-owner's ability to lease his or her unit at the time defendants purchased the property. The parties provided to the trial court only a copy of plaintiff's bylaws as amended effective July 6, 2016.[1]

---

[1] The copy of the bylaws provided to the trial court and this Court on appeal does not indicate an effective date. Plaintiff's leasing policy, effective September 26, 2016, however, references an amended version of the development's "governing documents (07/18/16)." Given the correlation between several relevant provisions of the leasing policy and the record copy of the amended

In any event, the record makes clear that defendant was, at the very least, required to provide plaintiff with a copy of any lease. Indeed, defendants did provide plaintiff with a copy of the September 2013 lease form, and the parties have raised no issue regarding defendants' initial leasing of the unit. The September 2013 lease expired in August 2015, after which defendants did not provide plaintiff with any updated leasing information. About May 2016, plaintiff came into the belief that defendants were leasing their unit, without providing plaintiff with a copy of the lease form. Plaintiff sent defendants a letter asking them to supply plaintiff with a copy of the lease form. The record contains no response from defendants.

As mentioned previously, the co-owners of the development amended plaintiff's bylaws on July 8, 2016. Plaintiff's attorney attested that he personally sent a copy of the amended bylaws to each record co-owner "as listed in the Washtenaw County Register of Deeds" and that the record co-owners approved the amendments by more than the required two-thirds vote. As amended, the bylaws set forth several restrictions on a co-owner's ability to lease a unit in the development. In pertinent part, article VI, subsection 2(A) of the bylaws provides that co-owners have a right to lease no more than one unit in the development and only if the lease would not cause the total number of leased units in the development to exceed 25% of the total units. A grandfathering clause in the bylaws, however, exempts from the lease cap co-owners with an approved lease on file with plaintiff as of July 8, 2016. Nevertheless, subsection 2(A) further provides:

> "In the event of a sale or transfer of ownership of a leased Unit, or in the event such a Unit is no longer being leased or held out for lease, all automatic rights to lease that Unit shall terminate and no further leasing of the Unit shall take place without first obtaining the written approval of the Board of Directors in compliance with these provisions."

Subsection 2(C)(1) provides that a co-owner "desiring to rent or lease a Unit, shall disclose that fact in writing to the Association at least ten (10) days before presenting a lease form to a potential lessee" and shall provide to plaintiff a copy of the lease form and a certificate of renter's insurance.

The bylaws vest in plaintiff the authority to charge a reasonable administrative fee for its review of the lease document, as well as the authority to adopt rules providing for monetary fines for a co-owner's failure to comply with the lease-disclosure provisions. The bylaws also require co-owners not living in the development to provide the association with current contact information and require leases and tenants to comply with the entirely of the bylaws and other documents governing the development. On August 26, 2016, plaintiff adopted a leasing policy which implemented the leasing provisions of the bylaws and set various administrative fees and fines, effective September 26, 2016.

On July 18, 2016, plaintiff sent defendants a second letter seeking a copy of the lease form in compliance with the bylaws and imposing a fine for defendants' noncompliance. A third letter was sent on October 24, 2016, again seeking the documentation and imposing a pricier fine.

---

bylaws, it is reasonable to conclude that the version of the amended bylaws provided to the trial court became effective on July 18, 2016.

Plaintiff sent a fourth letter on November 11, 2016. There is no written response in the record to any of these letters.

Plaintiff alleged, however, that defendants responded by telephone to the latest letter on January 12, 2017, at which time defendants claimed that the unit was "owner-occupied" meaning that there was no lease to provide to plaintiff. A recording of this conversation has not been provided to this Court.[2] Nevertheless, the record does contain a quit-claim deed dated August 1, 2016 by which defendants deeded the unit to themselves and "Kelly McGuire," the alleged occupant of the unit. As a result of the deed and telephone conversation, plaintiff waived the challenged administrative fees and fines on defendants' account.

Nevertheless, about July 2017, plaintiff came into the belief that defendants were again leasing their unit without providing plaintiff with a copy of the lease form or paying any of the associated leasing fees. Accordingly, plaintiff's attorney sent defendants another letter seeking defendants' provision of a leasing form, compliance with the bylaws and leasing policy, and payment of fees and fines. On September 20, 2017, plaintiff's counsel sent defendants a final letter seeking compliance with the leasing policy and bylaws. The letter indicated that plaintiff would still honor defendants' lease as being grandfathered in under the leasing policy—despite the development meeting the 25% leasing cap—if defendants provided the required documentation and paid the associated fees and fines. The record contains no response to these letters.

On November 17, 2017, plaintiff filed a complaint with the trial court seeking an order allowing it to evict any occupants from defendants' unit who were not co-owners, an injunction prohibiting defendants from further violating plaintiff's policies, monetary damages corresponding to defendants' unpaid administrative fees and fines, and attorney fees and costs. Defendants received service of the complaint at the same address to which plaintiff allegedly mailed each violation letter, which is the address defendants listed on the deeds to the unit.[3] Defendants admitted in their answer to the complaint that their unit "has always been used for rental purposes."

Subsequently, plaintiff moved the trial court under MCR 2.116(C)(10) for summary disposition on each of its claims. Plaintiff argued that, because defendants never paid the administrative fee or provided renewed lease documentation after the expiration of the September 2013 lease, there was no factual question that defendants leasing of their unit after the expiration of the 2013 lease violated plaintiff's bylaws. According to plaintiff, because defendants were not in compliance with the bylaws, any lease they entered into was not grandfathered in under the 2016 bylaw amendments and leasing policy, thereby entitling plaintiff to evict any tenant in defendants' unit who was not a co-owner. Alternatively, plaintiff argued that, if defendants did,

---

[2] The recording may, however, have been provided to the trial court.

[3] At the hearing on plaintiff's motion for summary disposition, plaintiff's counsel stated that he had a certified-mail receipt for at least one of the violation letters sent to defendants. (Motion hearing, 331). No certified-mail receipts are included in plaintiff's motion for summary disposition, however, and plaintiff's attorney did not offer the receipts as documentary evidence at the motion hearing.

in fact, deed the unit to Kelly McGuire, any grandfathered right to lease the unit terminated upon the transfer.

In their response to plaintiff's motion, defendants again admitted that they have "continually leased out their condo to third parties" since their 2013 purchase of the unit. Defendants argued, however, that plaintiff was not entitled to summary disposition because defendants "never received any notice of changes to the deed, bylaws or alleged violations." Defendant Vasilios Stoitsiades and his son, Jimmy Stoitsiades, provided affidavits indicating that they were not noticed of any violation until one of their tenants informed Jimmy Stoitsiades of the alleged violation. Defendants argued that this lack of notice was a violation of their rights under the development's master deed and bylaws, as well as their constitutional rights under the Fourth and Fourteenth Amendments. Defendants averred that they were entitled to grandfathering under the bylaws because plaintiff had a copy of the 2013 lease and because their unit was always held out for rental, despite not having any tenants in 2017 and 2018 "because of the actions of plaintiff." Defendants averred that their adult son contacted plaintiff after the first letter from plaintiff's attorney and that, on plaintiff's attorney's recommendation, they transferred the property to themselves and the tenant to resolve the violations.

After a hearing, the trial court granted plaintiff's motion for summary disposition in full, awarding plaintiff the entirety of the relief it sought in the complaint. In issuing its decision, the trial court stated only, "I do not believe that reasonable minds could differ on those alleged factual disputes. []I believe that the plaintiff has sustained their burden . . . ." This appeal followed.

## II. ANALYSIS

"We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; 926 NW2d 259 (2018). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 294.

On appeal, defendants argue that the trial court erred by granting summary disposition to plaintiff because a question of fact exists regarding whether defendants had notice of the amendments to the bylaws and master deed. Defendants also argue that they have substantially performed as a unit owner and that they should have been grandfathered in under the bylaws and leasing policy because plaintiff had a copy of the September 2013 lease and because plaintiff knew that the unit was defendants' investment property. Finally, defendants challenge the award of attorney fees,[4] arguing that plaintiff did not establish the reasonableness of the fees at an evidentiary hearing.[5] Defendants, however, have abandoned these arguments by failing to address them adequately in their brief.

---

[4] Defendants make no argument regarding the award of costs.

[5] Defendants make no argument regarding their earlier allegation that plaintiff's counsel induced them to transfer the property to Kelly McGuire.

Regarding defendants' notice argument, defendants offer only conclusions that they were not given notice of any proposed amendment to the master deed or bylaws and that this lack of notice violated their rights under the master deed and the Fourth and Fourteenth Amendments. Defendants, however, have not cited any section of the bylaws or master deed which entitles them to notice and have provided no supporting authority for their constitutional argument. Moreover, defendants have provided no analysis of why the amended provisions should not apply to them, despite the fact that, even without their vote, the other co-owners of the development approved the amendments by the required two-thirds majority.[6]

Concerning defendants' grandfathering argument, defendants make no logical connection between any current lease and their adherence to any prior governing policies with regard to the 2013 lease. If defendants are arguing that the fact that they supplied the 2013 lease to plaintiff is sufficient to grandfather them in under the 2016 amendments, then they have not offered any contractual analysis to support this argument. If defendants are arguing that their provision of the 2013 lease exempts them from strict compliance with the 2016 amendments under some form of a constructive-notice theory, they have provided neither analysis nor authority to support that argument. Indeed, defendants have provided no supporting authority for this argument at all.

Regarding the substantial-performance section of defendants' brief, this Court is unable to discern any argument here, let alone an argument properly supported with precedential authority. Defendants state only that they "have substantially performed as a condominium owner." A brief sentence then explains, "Under Michigan law, a contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." Defendants do not identify which "contract" they allegedly substantially performed; it is unclear whether defendants are referring to the original master deed, the original bylaws, the amended master deed or bylaws, the leasing policy, some other document, or a combination of documents. Moreover, defendants have not explained in what ways they substantially performed any "contract" or how this substantial performance exempts them from the leasing provisions in the amended bylaws or leasing policy. Outside of the brief explanation of substantial performance, defendants' offer no relevant precedential authority. In another section of their brief, defendants state that they have paid all required fees to plaintiff—presumably outside of any leasing fees. To the extent that defendants argue that their payment of association dues entitles them to lease their unit, defendants have offered no argument, contractual or otherwise, to support this assertion and have, likewise, offered no supporting authority.

Concerning defendants' attorney-fee argument, this section of defendants' brief suffers from a different deficiency: defendants offer only authority without linking that authority to this dispute. Defendants provide an explanation of the factors that trial courts should use to determine whether an attorney fee is reasonable, but do not apply those factors to this case. Defendants argue that they have "received no documents relating to attorney fees and costs," but ignore the fact that

---

[6] Defendants do not appear to make any argument regarding their earlier contention that they were not noticed of the violations, as opposed to the amendments. If defendants had intended to make this argument in their brief, they did not support it with any analysis or precedential authority.

plaintiffs provided an extensive explanation of their attorney fees as well as authority supporting the fee in their summary-disposition motion. Defendants do not address this documentation or authority on appeal. Similarly, defendants argue that plaintiff "must be required to establish by way of an evidentiary hearing that the costs and attorneys are warranted and the attorney fees reasonable." For this proposition, defendants cite—but do not quote—*Crosby v Bowater Inc Retirement Plan for Salaried Employees of Great Northern Paper, Inc*, 262 F Supp 2d 804 (WD Mich, 2003). Defendants, however, do not explain why the motion hearing was insufficient or why the supporting documentation plaintiff offered was inadequate to establish the fee. Finally, defendants make no argument explaining why the rule they draw from our federal colleagues should apply in state-court summary-disposition proceedings.[7]

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Riemer v Johnson*, 311 Mich App 632, 653; 876 NW2d 279 (2015) (internal citation and quotation marks omitted). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Thus, by failing to adequately address any of the errors asserted in their brief, defendants have abandoned their appeal.[8]

---

[7] Perhaps the reason why defendants have failed to offer any arguments regarding *Bowater* is that the federal district court's decision in that case was vacated by the Sixth Circuit Court of Appeals. *Crosby v Bowater Inc Retirement Plan for Salaried Employees of Great Northern Paper, Inc*, unpublished opinion in an unpublished order of the Court of Appeals for the Sixth Circuit, entered December 29, 2004 (Docket No. 03-1808); see also *Crosby v Bowater Inc Retirement Plan for Salaried Employees of Great Northern Paper, Inc*, 382 F3d 587 (2004) (vacating the judgment of the district court and remanding with instructions to dismiss plaintiff's complaint for lack for subject-matter jurisdiction). Alternatively, the reason why defendants failed to adequately address *Bowater* may be that the federal district court in *Bowater* held that "the Sixth Circuit only requires an evidentiary hearing on an attorney fee dispute when . . . the district court is unable to resolve material factual disputes based on the affidavits and written documentation submitted." Bowater, 262 F Supp 2d at 811. Even assuming that this state follows a similar rule to that explained in the district court's now-vacated opinion, defendants offer no explanation as to why plaintiff's summary-disposition motion and supporting documentation were insufficient to resolve any dispute.

[8] Despite our holding, we note our concern with the inadequacy of the trial court record in this case. Plaintiff failed to offer several important documents in the trial court, including any certified-mail receipts for the violation letters and a copy of the master deed and bylaws before the 2016 amendments. Similarly, we are concerned with the fact that the trial court offered only a single-sentence conclusory finding from the bench stating that there were no issues of fact, without providing any analysis of the issues. That being said, because defendants have failed to properly present any issue to this Court, defendants are not entitled to relief.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan