805 F.2d 146
 42 Fair Empl.Prac.Cas. 305,
41 Empl. Prac. Dec. P 36,705, 55 USLW 2265
 Mary Lucille COULTER, Plaintiff-Appellant,
v.
STATE OF TENNESSEE; Department of Transportation of the
State of Tennessee, Department of Personnel of the State of
Tennessee; and Darrell D. Akins, Commissioner of the
Department of Personnel, Defendants-Appellees.
 No. 85-5109.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 17, 1986.
Decided Oct. 29, 1986.
Rehearing and Rehearing En Banc Denied Dec. 18, 1986.
 
 Robert Belton, Harvard Law School, Cambridge, Mass., Barry L. Goldstein (argued), Washington, D.C., for plaintiff-appellant.
 Michael Lee Parsons, Asst. Atty. Gen., Nashville, Tenn., Diane Stamey (argued), for defendants-appellees.
 Before LIVELY, Chief Judge, and MERRITT and WELLFORD, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 This is an attorney fee appeal arising from a Title VII case. Robert Belton, a Vanderbilt University law professor who teaches in the employment discrimination field, was associated by another lawyer as co-counsel for a plaintiff who ultimately won her case. Mr. Belton challenges the District Court's order reducing his separate attorney fee award against the losing defendants from $22,532 to $14,167. The appeal raises significant issues respecting the applicable hourly rate to be used under the "lodestar" approach to attorney's fees[1] and the approach to be followed in measuring excessive hours.
 
 FACTUAL BACKGROUND
 
 2
 Aleta Arthur and Robert Belton represented plaintiff Coulter in a Title VII sex discrimination suit against the State of Tennessee and certain Tennessee agencies and officials. District Judge Morton ruled in favor of plaintiff on the issue of liability. The parties by agreement then submitted a consent order which disposed of all the remedial issues, awarded plaintiff a promotion and a small amount of compensation, awarded Ms. Arthur $13,621.25 in attorney's fees at the rate of $85 an hour, and reserved the question of attorney's fees due Mr. Belton for later determination.
 
 
 3
 Mr. Belton subsequently petitioned the District Court for an attorney fee award of $22,532.90 calculated on a total of 185.59 hours worked at rates of $110 per hour for services rendered during 1982 (4.25 hours) and at $125 per hour for 1983 (60.92 hours) and 1984 (120.42 hours). Judge Morton reduced the hourly rate to $85 for 1982 and $110 for 1983 and 1984, and he refused to award Mr. Belton a fee for 55.83 hours, which he considered unreasonably expended. Taking these reductions into account, Judge Morton ordered the defendants to pay Mr. Belton attorney's fees in the amount of $14,167.35. Judge Morton found that Ms. Arthur was the "lead" lawyer, a seasoned and effective trial lawyer, who conducted all of the trial and all the deposition examinations. Mr. Belton assisted in legal research and conceptualization of the case and in the review of documents and preparation of court papers. Judge Morton characterized the case as "simple," "tried in less than half a day," and "decided from the bench."
 
 HOURLY RATES
 
 4
 In adopting some 131 attorney fee shifting statutes,[2] including the civil rights statute applicable here, 42 U.S.C. Sec. 2000e-5(k) (1982) (awarding "reasonable" fees to prevailing parties in the "discretion" of the court), Congress intended to provide an economic incentive for the legal profession to try meritorious cases defining and enforcing statutory policies and constitutional rights in a variety of fields of legal practice. Congress did not intend that lawyers, already a relatively well off professional class, receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields. Legislative history speaks of "fees which are adequate to attract competent counsel, but which do not produce windfalls," S.Rep. No. 94-1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913, and cautions against allowing the statute to be used as a "relief fund for lawyers," 122 Cong.Rec. 33314 (1976) (remarks of Sen. Kennedy).[3] The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.[4] We therefore apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.
 
 
 5
 Mr. Belton requested that his fee be calculated on an hourly rate of $100 per hour for services rendered in 1982 and $125 per hour in 1983 and 1984. Judge Morton reduced the hourly rates to $85 for 1982 and $110 for 1983 and 1984 as reasonably reflecting the prevailing market rates for lawyers in this field in Nashville, Tennessee, the community in which both Mr. Belton and Ms. Arthur practice.
 
 
 6
 This finding is supported by the fact that Mr. Belton requested and was awarded fees based on an $85 rate for services rendered in 1982 in another Title VII action before Judge Morton. Perkins v. State Board of Education, No. 77-3552 (M.D.Tenn. March 11, 1983). Mr. Belton argues that his hourly rate was low in Perkins because Perkins was decided before the Supreme Court's decision in Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and did not use the "market rate" theory the Court espoused in Blum. In Blum the Court rejected the argument that attorney fee awards for nonprofit counsel should be calculated in a cost-based method and should be lower than fees calculated under a market rate theory for private "for profit" counsel. Mr. Belton's argument implies that his fees in Perkins were lower because they reflected his lower cost of practicing law resulting from his free access to office space and law library resources at Vanderbilt Law School.
 
 
 7
 This argument is not valid. In an earlier opinion in Perkins, Judge Morton did note the argument that Mr. Belton's fee should be lower because he was a law professor, but the judge awarded fees "based on prevailing rates in the area." "It is true," he said, "that one of the underlying factors in setting the rate may be overhead, but to the recipient thereof the components have no pertinency. The plaintiff is entitled to recover fees based on their reasonable worth, i.e., market value." Perkins v. State Board of Education, No. 77-3552 slip op. at 3-4 (M.D.Tenn. Nov. 4, 1980). The text of Judge Morton's orders undermines Mr. Belton's assertion that his fee was not calculated based on market rates as required by Blum. In addition, in Perkins Judge Morton awarded Richard Manson, a Nashville attorney in private practice, a fee calculated at a rate of $75 per hour for 1982.
 
 
 8
 The reduction in Mr. Belton's rates is also supported by the fact that in this case Ms. Arthur requested an attorney fee calculated at the rate of $85 per hour for all three years. The parties agree that under the consent order Ms. Arthur was paid $85 per hour for all of the work she did. Mr. Belton argues that this reference to Ms. Arthur's rate constitutes the admission of a "settlement ... to reduce the amount of a claim" in contravention of Rule 408 of the Federal Rules of Evidence. Belton's Brief at 18-19. Rule 408 does prohibit the admission of "[e]vidence of ... accepting ... valuable consideration in compromising ... a claim which was disputed as to either validity or amount, ... to prove liability for or invalidity of the claim or its amount." However, the rule allows the admission of such evidence for other purposes. In this case, reference to the settlement is for the statistical purpose of establishing the market rate prevailing in Nashville for the sort of legal services rendered by Mr. Belton. Laying the settlement aside, record evidence establishes that Ms. Arthur, described by Judge Morton as an "excellent" and highly effective trial lawyer in Nashville, sought $85 per hour for her services in the same Title VII case. The reduced figures reasonably reflect the market rates in Nashville at the time the services were rendered, the rates necessary to hire a competent lawyer to undertake the work in question in accordance with the principle stated above that "fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."
 
 HOURS EXPENDED
 
 9
 The second issue--the reasonableness of the hours claimed by Mr. Belton--illustrates an obvious inadequacy in the "lodestar" method of calculation. The rates-times-hours approach is a sufficient standard when there is no problem about the hours of service performed, but it does not solve the problem of excessive hours. See Report of Third Circuit Task Force, 108 F.R.D. 237, 247-49 (1985). Hours spent in court and at depositions can be verified and reviewed. Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed. Depending on the situation, the lawyer may have strong economic incentives to spend too many hours on a piece of work or to exaggerate the number of hours spent or the necessity or importance of the work. Similarly, it is often difficult to assess the need for two lawyers at a deposition, an interview, or a trial.
 
 
 10
 Mr. Belton requested fees for 185.59 hours. Judge Morton cut out 55 hours. The District Judge eliminated as excessive or unnecessary 8 of the 13 hours claimed for preparing his fee request; all of the 16.75 hours claimed for preparing, filing, and arguing what the District Judge characterized as a "futile" summary judgment motion; 22 of the 44 hours in preparing the stipulations and the pretrial brief; and 9 of 18 hours claimed for trial preparation.
 
 
 11
 Three very different kinds of issues can arise concerning excessive hours: (1) factual questions about whether the lawyer actually worked the hours claimed or is padding the account; (2) legal questions about whether the work performed is sufficiently related to the points on which the client prevailed as to be compensable; and (3) mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. On the first type of factual question we apply the clearly erroneous standard. On the second we determine whether the District Court erred. On the third concerning billing judgment we look to see whether the District Court, based on experience and the record in the case, misapplied the reasonable billing practices of the profession.
 
 
 12
 On the question of excessive hours we have three issues, none of which involve a question of padding, misrepresentation, or dishonest accounting. The first question involves the time spent in preparing and presenting the attorney fee petition and accompanying documentation after the civil rights case was over. The second involves preparation of the summary judgment motion. Both raise legal questions of compensability. The third involves the preparation of documents and raises a question of billing judgment.
 
 
 13
 Preparation of Fee Application.--Although time spent in preparing, presenting, and trying attorney fee applications is compensable; some guidelines and limitations must be placed on the size of these fees. Otherwise the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case.
 
 
 14
 The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over, although in the private market place, lawyers do not usually charge, and clients do not usually pay, for the time it takes lawyers to calculate their fees. See cases collected and discussed in In re Nucorp Energy, Inc., 764 F.2d 655, 660 (9th Cir.1985). The legislative intent behind attorney fee statutes, however, was to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases. The attorney fee case is not the case Congress expressed its intent to encourage; and in order to be included, it must ride piggyback on the civil rights case.
 
 
 15
 Judge Morton struck the right balance. He limited these hours to approximately 3% of the hours allowed in the main case. In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.
 
 
 16
 Summary Judgment Motion.--On summary judgment motions and other similar motions that go to a particular issue in a case, the question should be whether the person seeking compensation prevailed on the motion or in the end prevailed on the issue raised in the motion in part as a result of the motion. This particular summary judgment motion advanced Mr. Belton's case and was a factor in winning. His summary judgment motion showed that his client had made out a prima facie employment discrimination case and that the state had failed to plead or otherwise come forward with a valid reason for the failure to promote the plaintiff as rebuttal to the prima facie case. As a result of the motion the state amended its pleading to allege a justification, and Ms. Arthur and Mr. Belton were then able to show that the justification the state advanced was a pretext. Thus Mr. Belton's summary judgment motion narrowed the issue in the case and helped his client win at the trial. The 16 hours or 2 days Mr. Belton spent on this motion should be allowed.
 
 
 17
 Preparation of Stipulations, Pretrial Brief, and for Trial.--When the issue is a question of the lawyer's judgment in billing for a particular number of hours on a piece of work, we must depend in larger measure on the fairness of the District Court in assessing the needs of the case. Under the circumstances presented here, we do not believe the District Court acted arbitrarily or irrationally in reducing the pretrial preparation hours from 62 to 31. Ms. Arthur was lead trial counsel and conducted the trial itself. Mr. Belton prepared extensive stipulations of fact, based in major part on answers to previous interrogatories he had prepared, and an able trial brief. His conceptualization of the case and his stipulations and brief contributed to a successful outcome, but we defer to the view of the trial judge that 31 hours or approximately 4 working days was sufficient for these tasks. Judges will differ on questions of this kind, but our own experience as lawyers and judges tells us that the District Judge has not exercised his discretion and expertise on this mixed question of law and fact in an arbitrary or unfair way. Judge Morton gave Mr. Belton credit for all of the more than 3 days time he spent at the depositions and short trial conducted altogether by Ms. Arthur. He did so on the theory that multiple representation can be productive. But there is also the danger of duplication, a waste of resources which is difficult to measure. Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge Morton did here in reducing this item by 50%.
 
 
 18
 Accordingly, the decisions of the District Court as to the hourly rate and the hours allowed for the preparation of the attorney fee case and the pretrial stipulations and brief are affirmed. The decision on the hours allowed on the motion for summary judgment is reversed and the case remanded to the District Court to recalculate the fees to include these hours.
 
 
 19
 WELLFORD, Circuit Judge, concurring in part and dissenting in part.
 
 
 20
 I agree with Judge Merritt's well considered opinion with respect to all aspects of this fee controversy except with that part dealing with the summary judgment motion. (Page 151.) Judge Morton had first hand opportunity to consider the role and significance of this motion in making his ruling. In my judgment, it had little to do with the final outcome except perhaps to "narrow the issue in the case" as found by Judge Merritt. I would therefore on remand to the district court allow that court to determine on further consideration what portion of the hours spent on the summary judgment should be allowed to Mr. Belton for his services after taking into account the rationale expressed by this court herein.
 
 APPENDIX A
 
 21
 Federal Statutes Authorizing the Award of Attorney Fees
 
 
 22
 Act to Prevent Pollution from Ships, 33 U.S.C. Sec. 1910(d)
 
 
 23
 Age Discrimination Act of 1975 (as amended by Pub.L. 95-478, Sec. 401) U.S.C. Sec. 6104(e)
 
 
 24
 Age Discrimination in Employment Act of 1967, 29 U.S.C. Sec. 626(b)
 
 
 25
 Agricultural Unfair Trade Practices 7 U.S.C. Sec. 2305(a), (c)
 
 
 26
 Alaska Native Claims Settlement Act, 43 U.S.C. Sec. 1619
 
 Alien Owners of Land, 48 U.S.C. Sec. 1506
 
 27
 Atomic Energy Act of 1954, 42 U.S.C. Sec. 2184
 
 
 28
 Bank Holding Company Act, 12 U.S.C. Sec. 1975
 
 
 29
 Bankruptcy Act, 11 U.S.C. Secs. 109, 205(c)(12), 632, 641, 642, 643, 644, 1975
 
 
 30
 Bankruptcy Reform Act (Pub.L. 95-598), 11 U.S.C. Secs. 303(i), 330(a), 363(n), 503(b)
 
 
 31
 Black Lung Benefits Act, 30 U.S.C. Sec. 932(a)Civil Rights Act of 1964, Title II, 42 U.S.C. Sec. 2000a-3(b)
 
 
 32
 Civil Rights Act of 1964, Title VII, 42 U.S.C. Sec. 2000e-5(k)
 
 
 33
 Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988
 
 
 34
 Civil Service Reform Act of 1978 (Pub.L. 95-454, Secs. 205, 702), 5 U.S.C. Secs. 5596(b)(1), 7701(g)
 
 Clayton Act, 15 U.S.C. Sec. 15
 
 35
 Clean Air Act (as amended by Pub.L. 95-95), 42 U.S.C. Secs. 7413(b), 7604(d), 7607(f), 7622(b)(2)(B), (e)(2)
 
 
 36
 Coal Mine Safety Act, 30 U.S.C. Sec. 938(c)
 
 Coast Guard Act, 14 U.S.C. Sec. 431(c)
 
 37
 Commodity Futures Trading Commission Act of 1974, 7 U.S.C. Sec. 18(f), (g)
 
 
 38
 Communications Act of 1934, 47 U.S.C. Secs. 206, 407
 
 
 39
 Condominium and Cooperative Abuse Relief Act of 1980, 15 U.S.C. Secs. 3608(d), 3609, 3611
 
 
 40
 Consumer Leasing Act, 15 U.S.C. Sec. 1667b(a)
 
 
 41
 Consumer Product Safety Act, 15 U.S.C. Secs. 2060(c), 2060(f), 2072(a), 2073
 
 
 42
 Contract Disputes Act of 1978, 41 U.S.C. Sec. 601 et seq.
 
 Copyright Act, 17 U.S.C. Sec. 505
 
 43
 Counsel's Liability for Excessive Costs, 28 U.S.C. Sec. 1927
 
 
 44
 Criminal Code, 18 U.S.C. Secs. 3006A(d), 3495
 
 
 45
 Deep Seabed Hard Mineral Resources Act, 30 U.S.C. Sec. 1427(c)
 
 
 46
 Deepwater Ports Act, 33 U.S.C. Sec. 1515(d)
 
 
 47
 Economic Opportunity Act of 1964, 42 U.S.C. Sec. 2701 et seq.
 
 
 48
 Electronic Fund Transfer Act (Pub.L. 95-630, Title XX), 15 U.S.C. Sec. 1693m(a), (f)
 
 
 49
 Employee Retirement Income Security Act, 29 U.S.C. Sec. 1132(g)
 
 
 50
 Endangered Species Act, 16 U.S.C. Sec. 1540(g)(4)
 
 
 51
 Energy Policy and Conservation Act, 42 U.S.C. Sec. 6305(d)
 
 
 52
 Energy Reorganization Act of 1974 (as amended by Pub.L. 95-601), 42 U.S.C. Sec. 5851(b)(2)(B), (e)(2)
 
 
 53
 Equal Access to Justice Act, 5 U.S.C. Sec. 504, 28 U.S.C. Sec. 2412
 
 
 54
 Equal Credit Opportunity Act, 15 U.S.C. Sec. 1691e(d)
 
 
 55
 Ethics in Government Act of 1978 (Pub.L. 95-521, Sec. 710(d)), 2 U.S.C. Sec. 1692k
 
 
 56
 Fair Credit Reporting Act, 15 U.S.C. Secs. 1681n, o
 
 
 57
 Fair Debt Collection Practices Act (Pub.L. 95-109, Sec. 813-(a)), 15 U.S.C. Sec. 1692k
 
 
 58
 Fair Housing Act of 1968, 42 U.S.C. Sec. 3612(c)
 
 
 59
 Fair Labor Standards Act, 29 U.S.C. Sec. 216(b)
 
 
 60
 Federal Contested Election Act, 2 U.S.C. Sec. 396
 
 
 61
 Federal Credit Union Act, 12 U.S.C. Sec. 1786(o)
 
 
 62
 Federal Deposit Insurance Act, 12 U.S.C. Sec. 1818(n)
 
 
 63
 Federal Employment Compensation for Work Injuries, 5 U.S.C. Sec. 8127
 
 
 64
 Federal Mine Safety and Health Act, 30 U.S.C. Sec. 815(c)(3) (added by Pub.L. 95-164), 30 U.S.C. Sec. 938(c)
 
 
 65
 Federal Power Act (as amended by Pub.L. 95-617, Sec. 212), 16 U.S.C. Sec. 825o1-(b)(2)
 
 
 66
 Federal Rules of Appellate Procedure, App. Rule 38 (28 U.S.C.)
 
 
 67
 Federal Rules of Civil Procedure, App. Rules 37, 56(g), (28 U.S.C.)
 
 
 68
 Federal Trade Commission Improvement Act, 15 U.S.C. Secs. 57a(h)(1)
 
 
 69
 Federal Water Pollution Control Act Amendment of 1972, 33 U.S.C. Sec. 1365(d)
 
 
 70
 Fees and Costs, 28 U.S.C. Sec. 1912, Sec. 1927
 
 
 71
 Foreign Intelligence Surveillance Act of 1978 (Pub.L. 95-511, Sec. 110), 50 U.S.C. Sec. 1810
 
 
 72
 Freedom of Information Act, 5 U.S.C. Sec. 552(a)(4)(E)
 
 
 73
 Government in the Sunshine Act, 5 U.S.C. Sec. 552b(i)
 
 
 74
 Guam Organic Act (Pub.L. 95-134, Sec. 204), 48 U.S.C. Sec. 1424c(f)
 
 
 75
 Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. Secs. 15c(a)(2), (d)(2), 26
 
 
 76
 Hobby Protection Act, 15 U.S.C. Sec. 2102Home Owners Loan Act of 1933, 12 U.S.C. Sec. 1464(d)(8)
 
 
 77
 Housing and Community Development Amendments of 1979 (Pub.L. 96-153, Sec. 405), 15 U.S.C. Sec. 1709
 
 
 78
 Indian Claims Commission Act, 25 U.S.C. Secs. 70n, 70V-3(a), (added by Pub.L. 95-69)
 
 
 79
 Indian Contract Act, 25 U.S.C. Secs. 81, 82, 82(a), 85
 
 
 80
 Indian Reorganization Act, 25 U.S.C. Sec. 476
 
 
 81
 International Claims Settlement Act, 22 U.S.C. Secs. 1623(f), 1631(j), 1641(p), 1642(m), 1643(k), 1644(l)
 
 
 82
 Interstate Commerce Act, 49 U.S.C. Secs. 11705(d)(3), 11708(c), 11710(b), 11711(d), 11711(e)
 
 
 83
 Japanese-American Evacuation Claims Act of 1948, 50 U.S.C. App. Sec. 1985
 
 
 84
 Jewelers Hall-Mark Act, 15 U.S.C. Sec. 298(b), (c), (d)
 
 
 85
 Jury System Improvements Act of 1978 (Pub.L. 95-972, Sec. 6), 28 U.S.C. Sec. 1875(d)(2)
 
 
 86
 Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Secs. 431(c), 501(b)
 
 
 87
 Legal Services Corporation Act, 42 U.S.C. Sec. 2996e(f)
 
 
 88
 Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 399(e)(1), 928
 
 
 89
 Magnuson-Moss Warranty Act, 15 U.S.C. Sec. 2310(d)(2)
 
 
 90
 Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. 1415(g)(4)
 
 
 91
 Merchant Marine Act of 1936, 46 U.S.C. Sec. 1227
 
 
 92
 Mexican-American Chamizal Convention Act of 1946, 22 U.S.C. Sec. 277d-21
 
 
 93
 Military Personnel and Civilian Employees Claims Act of 1964, 31 U.S.C. Sec. 243
 
 
 94
 Mobile Home Construction and Safety Standards Act, 42 U.S.C. Secs. 5412(b)
 
 
 95
 Motor Vehicle Information and Cost Savings Act, 15 U.S.C. Secs. 1918(a), 1989(a)
 
 National Guard Act, 32 U.S.C. Sec. 334
 
 96
 National Historic Preservation Act, 16 U.S.C. Sec. 470W-4
 
 
 97
 National Housing Act, 12 U.S.C. Sec. 1730(m)(3)
 
 
 98
 National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. Sec. 1400(b)
 
 
 99
 Natural Gas Pipeline Safety Act, 42 U.S.C. Sec. 1686(e)
 
 
 100
 Noise Control Act of 1972, 42 U.S.C. Sec. 4911(d)
 
 
 101
 Norris-LaGuardia Act, 29 U.S.C. Sec. 107(e)
 
 
 102
 Ocean Dumping Act, 33 U.S.C. Sec. 1415(g)(4)
 
 
 103
 Ocean Thermal Energy Conservation Act of 1980, 42 U.S.C. Sec. 9124(d)
 
 
 104
 Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. Sec. 3766(c)(4)(B)
 
 
 105
 Organized Crime Control Act of 1970, 18 U.S.C. Sec. 1964(c)
 
 
 106
 Outer Continental Shelf Lands Act (as amended by Pub.L. 95-372), 43 U.S.C. Sec. 1349(a)(5), (b)(2)
 
 
 107
 Packers and Stockyards Act, 7 U.S.C. Sec. 210(f)
 
 Patent Infringement, 32 U.S.C. Sec. 285
 
 108
 Perishable Agricultural Commodities Act, 7 U.S.C. Sec. 499g(b), (c)
 
 
 109
 Petroleum Marketing Practices Act (Pub.L. 95-297, Sec. 105(d)), 15 U.S.C. Sec. 2805(d)(1), (3)
 
 Plant Variety Act, 7 U.S.C. Sec. 2565
 
 110
 Privacy Act, 5 U.S.C. Sec. 552a(g)(2)(B), (3)(B), (4)
 
 
 111
 Powerplant and Industrial Fuel Use Act of 1978, 42 U.S.C. Sec. 8435(d)
 
 
 112
 Public Utility Holding Company Act of 1935, 15 U.S.C. Sec. 79g(d)(4), 79j(b)(2)
 
 
 113
 Public Utility Regulatory Policies Act of 1978 (Pub.L. 95-617, Sec. 122), 16 U.S.C. Sec. 2632(a)
 
 
 114
 Railroad Revitalization and Reform Act, 45 U.S.C. Sec. 854(g)
 
 
 115
 Railroad Unemployment Insurance Act, 45 U.S.C. Sec. 355(i)
 
 Railway Labor Act, 45 U.S.C. Sec. 153(p)
 
 116
 Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2607(d)
 
 
 117
 Rehabilitation Act of 1973 (as amended by Pub.L. 95-602, Sec. 120), 29 U.S.C. Sec. 794a(b)
 
 
 118
 Right to Financial Privacy Act of 1978 (Pub.L. 95-630 Secs. 1117(a), 1118), 12 U.S.C. Secs. 3417(a), 3418Safe Drinking Water Act, 42 U.S.C. Secs. 300j-8(d), 9(i)(2)(B)(ii)
 
 
 119
 Securities Act of 1933, 15 U.S.C. Sec. 77k(e)
 
 
 120
 Securities Exchange Act of 1934, 15 U.S.C. Sec. 78r(a)
 
 
 121
 Securities Investor Protection Act, 15 U.S.C. Sec. 78eee(b) (Pub.L. 95-283, Sec. 7(b)(5))
 
 
 122
 Servicemen's Group Life Insurance Act, 38 U.S.C. Sec. 784(g)
 
 
 123
 Sex Discrimination Prohibition (Title IX of Pub.L. 92-318), 20 U.S.C. Sec. 1681 et seq. See 42 U.S.C. Sec. 1988
 
 
 124
 Social Security Act Amendments of 1965, 42 U.S.C. Sec. 406
 
 
 125
 Solid Waste Disposal Act, 42 U.S.C. Secs. 6971(c), 6972(e)
 
 
 126
 State and Local Fiscal Assistance Amendment of 1976, 31 U.S.C. Sec. 1244(e)
 
 
 127
 Surface Mining Control and Reclamation Act (Pub.L. 95-87), 30 U.S.C. Secs. 1270(d), (f), 1275(e), 1293(c)
 
 
 128
 Tax Reform Act of 1976, 26 U.S.C. Sec. 6110(i)(2)
 
 
 129
 Toxic Substances Control Act, 15 U.S.C. Secs. 2605(c)(4)(A), 2618(d), 2619(c)(2), 2620(b)(4)(C), 2622(b)(2)(B)
 
 Trademark Act, 15 U.S.C. Sec. 1117
 
 130
 Trading With the Enemy Act, 50 U.S.C. App. Sec. 20
 
 
 131
 Trust Indenture Act, 15 U.S.C. Sec. 77000(e), www(a)
 
 
 132
 Truth in Lending Act, 15 U.S.C. Sec. 1640(a)
 
 Unfair Competition Act, 15 U.S.C. Sec. 72
 
 133
 Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. Sec. 4654
 
 
 134
 United States as a Party, 28 U.S.C. Sec. 2412
 
 
 135
 Veterans' Benefits Act, 38 U.S.C. Sec. 3404(c)
 
 
 136
 Voting Rights Amendment of 1975, 42 U.S.C. Sec. 19731(e)
 
 
 137
 War Hazards Compensation Act, 42 U.S.C. Sec. 1714
 
 
 138
 Water Pollution Prevention and Control Act, 33 U.S.C. Secs. 1365(d), 1367(c)
 
 Wire Interception Act, 18 U.S.C. Sec. 2520
 
 
 [1]
 The rate-times-hours method of calculation, often referred to as the "lodestar" method, has been approved, in modified form, though not mandated, by the Supreme Court. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ---, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); Northcross v. Board of Education, 611 F.2d 624, 636 (6th Cir.1979). See also Report of Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985), for criticism of this method and recommendations for improvement
 
 
 [2]
 9 Att'y Fee Awards Reporter 2-3 (1986) (See Appendix A)
 
 
 [3]
 These quotations are from the legislative history of 42 U.S.C. Sec. 1988, the Civil Rights Attorney's Fees Awards Act of 1976. However, this provision was patterned in part on Title VII's attorney fee provision, which is involved in this case. See Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); Hanrahan v. Hampton, 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980). We consider the legislative history of Sec. 1988 to be indicative of congressional intent relative to Sec. 2000e-5(k). For further discussion of this legislative history, see Hensley v. Eckerhart, 461 U.S. at 429-30, 444-46, 103 S.Ct. at 1945-46
 
 
 [4]
 "These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied
 Moreover, when an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance."
 Pennsylvania v. Delaware Valley Citizens' Council, supra, n. 1, 106 S.Ct. at 3098-99.