Hobart Ward ANDERSON and Hoby
for the Commonwealth,
Plaintiffs,

v.

Michael C. WILSON, in his official capacity as County Attorney for Greenup County, KY, and as a representative of the class of County Attorneys in the Commonwealth of Kentucky, et al., Defendants.

No. CIV.A. 0:99–189–JMH.

United States District Court,
E.D. Kentucky,
Ashland Division.

Feb. 3, 2005.

County, KY and as a representative of the class of County Attorneys in the Commonwealth of Kentucky, A.B. Chandler, III sued as A. Benjamin Chandler, III, in his official capacity as Attorney General for the Commonwealth of Kentucky, Donald L. Cox in his official capacity as Chair of the Kentucky Registry of Election Finance, Judith Grisham Clabes in her official capacity as a Member of the Kentucky Registry of Election Finance, Scott C. Cox in his official capacity as Member of the Kentucky Registry of Election Finance, David Shawn Samford in his official capacity as a Member of the Kentucky Registry of Election Finance, Robert E. Sanders in his official capacity as Member of the Kentucky Registry of Election Finance, John L. Smith in his official capacity as Member of the Kentucky Registry of Election Finance, John Y. Brown, III in his official capacity as Chair of the Kentucky State Board of Elections, Janie Bruce in her official capacity as a Member of the Kentucky State Board of Elections, Charles W. Buchanan in his official capacity as a Member of the Kentucky State Board of Elections, John Caudill in his official capacity as a Member of the Kentucky State Board of Elections, John Chowning in his official capacity as a Member of the Kentucky State Board of Elections, Dave Disponett in his official capacity as a Member of the Kentucky State Board of Elections, Hade Durbin in his official capacity as Member of the Kentucky State Board of Elections, Clifford Duvall in his official capacity as Commonwealth Attorney for Greenup, KY and as representative of the class of Commonwealth Attorneys in the Commonwealth of Kentucky, Defendants.

Heidi K. Meyer, James Bopp, Jr., Justin David Bristol, Bopp, Coleson & Bostrom, Terre Haute, IN, John Kenneth Bush, Greenebaum, Doll & McDonald PLLC, Louisville, for Hobart Ward Anderson, Hoby for the Commonwealth, Plaintiffs.

Amy Denise Cubbage, Frost Brown Todd LLC, Louisville, KY, Brenda Kay Dinkins Allen, Office of the Attorney General, Civil and Environmental Law Division, D. Brent Irvin, Office of the Attorney General, Janet M. Graham, Attorney General's Office, Frankfort, KY, Sheryl G. Snyder, Frost Brown Todd LLC, Louisville, KY, Jennifer Black Hans, Kentucky Registry of Election Finance, Rosemary F. Center, Kentucky Registry of Election Finance, Frankfort, KY, for Lloyd E. Spear in his official capacity as Commonwealth Attorney for Greenup County, KY and as representative of the class of Commonwealth Attorneys in the Commonwealth of Kentucky, Michael C. Wilson in his official capacity as County Attorney for Greenup

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court upon Plaintiffs' petition for attorneys' fees and

expenses or, in the alternative, motion for extension of time [Record No. 104]. In support of their motion, Plaintiffs filed a memorandum of law [Record No. 105]. Defendants Kentucky State Board of Elections ("Board of Elections") and Kentucky Attorney General ("Attorney General") filed a response in opposition to Plaintiff's motion [Record No. 110]. Additionally, the members of the Kentucky Registry of Election Finance named as Defendants in Plaintiff's complaint ("Registry Defendants") filed a response to Plaintiff's motion [Record No. 111]. Plaintiff replied to both responses [Record No. 113], and this matter is now ripe for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND OF THE UNDERLYING CASE

Hobart Anderson ("Anderson") filed to run as a write-in candidate in Kentucky's 1999 gubernatorial election. Because write-in candidates were not eligible to appear on the ballot for the general election, Anderson's campaign was not entitled to receive matching funds under Kentucky's Public Financing Campaign Act. Anderson filed suit in October 1999 challenging nine separate Kentucky statutes that regulated the conduct of elections and campaign finance. Specifically, Anderson alleged that the statutes proscribed several of the campaign activities in which Anderson wanted to engage, including: distributing within 500 feet of polling places literature to voters providing instructions for casting write-in ballots; soliciting and accepting contributions after the general election date; accepting cash contributions through fundraisers; loaning his own money in excess of $50,000 to his campaign; and soliciting and accepting contributions within 28 days of the election.

On March 21, 2002, the district court rejected Plaintiffs' challenges and granted summary judgment in favor of Defendants. Plaintiffs appealed, and the United States Court of Appeals for the Sixth Circuit reversed in part the district court's decision. *Anderson v. Spear*, 356 F.3d 651, 677 (6th Cir.2004). The Sixth Circuit held that, of the nine statutory challenges before it, seven were unconstitutional.[1] *Id.*

## II. PROCEDURAL BACKGROUND REGARDING THE INSTANT PETITION

On June 1, 2004, Plaintiffs filed a petition for attorneys' fees [Record No. 100]. Then, on June 9, 2004, this Court entered an Order holding Plaintiffs' petition in abeyance pending the conclusion of proceedings in the Supreme Court of the United States for the underlying case [Record No. 101]. In that Order, the Court instructed Plaintiffs to submit legal memoranda within 30 days of the conclusion of Supreme Court proceedings. On November 24, 2004, the Clerk's Office for this Court received a letter confirming that the Supreme Court had denied the petition for certiorari in this case. On December 27, 2004, Plaintiffs refiled their petition for

---

1. The Sixth Circuit agreed with Plaintiffs that the following statutes were unconstitutional: (1) KRS § 117.235 (prohibiting distribution of literature within 500 feet of polling places); (2) KRS § 121A.010(11) (defining "contribution"); (3) KRS § 121A.080(6) (requiring disgorgement of funds remaining in campaign accounts post-election); (4) KRS § 121.150(16) (banning post-election contributions); (5) KRS § 121A.050(2) (banning cash contributions); (6) KRS § 121.150(13) & (21) (banning candidate loans to campaign in excess of $50,000); (7) KRS §§ 121.150(24) & 121A.030(5) (prohibiting contributions within 28 days preceding general election). *Id.* at 656–75. The Sixth Circuit affirmed the district court, however, on Plaintiffs' challenges to KRS §§ 121A and 121A.030(5)(a), which eliminated the contribution cap for candidates participating in the public finance system but prohibited write-in candidates from receiving matching funds. *Id.* at 675–77.

attorneys' fees and filed contemporaneously therewith a memorandum of law and several declarations. Accordingly, the Court will address the merits of the most recent petition that Plaintiffs filed [Record No. 104] and will deny the previously filed petition as moot. Plaintiffs have submitted documentation supporting their motion. Defendants object to numerous facets of Plaintiffs' petition on grounds that the hourly rates and hours expended are unreasonable, that Plaintiffs may only recover for time spent on successful claims, and that Plaintiffs claim costs that are not recoverable under Sixth Circuit law.

## III. DISCUSSION

■ In federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Where a party files a petition for fees with the court, the court must first determine whether the fee applicant was the "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A party may be considered "prevailing" where the party succeeded " 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.* (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Once a court determines that the fee applicant was a "prevailing party," the Court must determine the fee that is "reasonable" under the circumstances. *Id.*

■ To determine the reasonable fee in a particular case, courts employ the lodestar method—reasonable number of hours expended times a reasonable hourly billing rate. *Id.* at 432, 103 S.Ct. 1933.

The court determining the appropriate attorneys' fees to award in a particular case must state a clear basis for its award and should specifically address any objections by parties opposing the fee award. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990). Initially, the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. If the fee applicant carries the burden of showing that the proposed hours and rate are reasonable, the proposed fee "is presumed to be the reasonable fee contemplated by § 1988." *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

## A. Untimeliness of Documentation Supporting Petition

By Order entered on June 9, 2004, this Court held Plaintiffs' petition for fees in abeyance pending the conclusion of proceedings in the Supreme Court of the United States. In the Order, the Court instructed Plaintiffs to submit a legal memorandum within 30 days of the conclusion of Supreme Court proceedings. Because the Supreme Court denied certiorari on November 1, 2004, a strict interpretation of this Court's Order required Plaintiffs to file their supporting documentation by December 1, 2004. However, Plaintiffs' counsel did not receive notification of the denial of certiorari until November 12th, and the Clerk's Office for this Court did not docket the denial until November 24th when it received notification from the Supreme Court. Plaintiffs' counsel filed their supporting documentation on December 27, 2004, the first business day following the Court Christmas holiday.[2]

---

2. Plaintiffs contend that a December 24th deadline is a reasonable interpretation of the Court's Order in light of the fact that the denial of certiorari was not docketed until November 24, 2004. Plaintiffs filed their supporting documentation on the first business day following the "arguable" December 24th deadline.

Additionally, Plaintiffs submitted the declaration of Raeanna S. Moore ("Moore"), an attorney for Bopp, Coleson & Bostrom ("BC & B"), one of the firms that represented Plaintiffs in this matter. Moore testified that in October of 2004, she took over the firm function of filing fee petitions, a task that had been formerly assigned to an individual named Eric Bohnet ("Bohnet"). On November 12, 2004, when BC & B received notification that the Supreme Court had denied certiorari, Moore contacted Bohnet, who told Moore that there was no pending deadline in this case and that a formal fee petition should be filed within a reasonable amount of time. On December 15, 2004, a colleague of Moore's found this Court's Order regarding the actual due date for the supporting documentation for Plaintiffs' fee petition. According to Moore, since that time, she has worked on the fee petition.

■ Although Moore would be strongly advised to verify Court deadlines in the future rather than merely relying on the word of former colleagues, the Court chooses not to impose the harsh penalty of denying the petition solely for its untimeliness. The Sixth Circuit has applied the factors from *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), to § 1988 cases in which a fee petition was not timely filed, to determine if the untimeliness resulted from excusable neglect. *Horne v. City of Hamilton, Ohio*, 1999 WL 313902, at *2 (6th Cir. May 3, 1999); *see also Allen v. Murph*, 194 F.3d 722, 727 (6th Cir.1999) (applying the *Pioneer* factors to an attorneys' fees petition brought pursuant to Fed.R.Civ.P. 54(b)). The *Pioneer* factors to be considered are: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential

impact on proceedings; (3) the reason for the delay and whether it was in the control of the party; and (4) whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

■ Applying these factors to the case at hand, the Court finds that Moore's conduct in this case constitutes excusable neglect. Plaintiffs' original petition was filed in a timely fashion, and their failure to file supporting documentation within the ordered time does not prejudice Defendants who have been on notice of the petition since June of 2004. Moreover, Plaintiffs present a colorable argument that, because the Court Clerk did not docket the denial of certiorari until November 24th, a December 24th deadline applies, which Plaintiffs missed by just one business day. Furthermore, Moore's declaration indicates that she, seemingly in good faith, attempted to address the fee petition but was provided faulty information by a colleague. Though Moore's method of investigation regarding pending court matters is ill-advised, it does not rise to the level of bad faith. Accordingly, the Court will address the merits of Plaintiffs' petition.

## B. Prevailing Party

Undoubtedly, Plaintiffs are "prevailing parties" as that term is defined in the case law interpreting § 1988. Plaintiffs' suit resulted in seven of nine challenged statutes being declared unconstitutional. It is additionally worth noting that Defendants do not dispute that Plaintiffs prevailed, at least in some respects.[3] The Court finds that Plaintiffs succeeded on significant issues in this litigation and that they achieved at least some of the benefit they sought in bringing suit, thereby qualifying

---

**3.** Defendants argue instead that Plaintiffs did not succeed on *all* claims, which should result in a reduction of the attorneys' fees. The

Court will address this argument where it properly arises in the fee analysis.

them as prevailing parties. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

## C. Reasonable Fee

Next, the Court must apply the lodestar method to determine what fee would be reasonable under the circumstances of this case. The lodestar method requires the Court to conduct a two-part inquiry. *Id.* at 432, 103 S.Ct. 1933. The Court must determine (1) the reasonable hourly rate for the attorneys who worked on Plaintiffs' case and (2) how many hours of service the attorneys expended. *Coulter v. State of Tennessee,* 805 F.2d 146, 148–52 (6th Cir. 1986).

### 1. Reasonable Hourly Rate

Defendants argue that the hourly rates proposed by Plaintiffs are not reasonable. Specifically, Defendants contest whether Plaintiffs needed to hire out-of-town, specialized counsel and whether the rates proposed are in line with market rates for Ashland, Kentucky, where this suit was filed. Plaintiffs argue that this case required the expertise of BC & B, a firm specializing in First Amendment litigation and that, moreover, the rates proposed are in line with the rates of Ashland attorneys with similar skill and experience. Plaintiffs additionally retained the firm of Greenebaum Doll & McDonald PLLC ("GD & M"),[4] which has a Louisville, Kentucky, office. Defendants also contest the proposed hourly rates of the GD & M attorneys who worked on Plaintiffs' case.

■ District courts have considerable "discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring,* 36 F.3d 517, 533 (6th Cir.1994). Where a fee applicant seeks to recover fees for an out-of-town specialist, such as the firm of BC & B, the district court must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir.1995). Additionally, where "competent counsel was readily available locally at a lower charge or rate," the district court may apply local market rates to the services provided by the out-of-town specialist. *Id.* at 535, 536. Although "special skill and experience of counsel should be reflected in the reasonableness of the hourly rates," *Blum,* 465 U.S. at 898, 104 S.Ct. 1541, "[s]ection 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel." *Hadix,* 65 F.3d at 535. Further, the mere fact that a particular attorney "has a national reputation for expertise in [the relevant] kind of litigation does not constitute proof that [the attorney's] expertise was necessary" to the litigation. *Id.*

■ The Court answers the first question—whether hiring out-of-town counsel was reasonable—in the affirmative. Plaintiffs submitted the declaration of David Mussetter ("Mussetter"), an Ashland attorney who has practiced law for 23 years and is familiar with this litigation. Mussetter stated that a specialized attorney was needed in light of the complex First Amendment and election issues. The Registry Defendants argue in their brief that they were able to hire Sheryl Snyder ("Snyder"), an attorney in Louisville, Ken-

---

4. Peculiarly, Plaintiffs' petition states that they retained the Louisville firm of Scott & Kienzle, P.A. However, Plaintiffs make no other mention of this firm, and all evidence submitted indicates that GD & M is the Louis-ville firm that represented Plaintiffs. Accordingly, the Court can only assume that the reference to Scott & Kienzle, P.A. was an error.

tucky, with particular experience in campaign finance law, to represent them. To state the obvious, however, a Louisville attorney is also not an "in-town attorney" in a case pending in Ashland. The Court finds that Plaintiffs have satisfied their burden of showing the need for out-of-town counsel, and Defendants have not submitted any evidence to the contrary.

Having said that, however, Plaintiffs are not entitled to the best First Amendment counsel in the country. Furthermore, the hourly rate to be applied to Plaintiffs' counsel must still be reasonable in light of their experience. *Blum*, 465 U.S. at 898, 104 S.Ct. 1541. Plaintiffs propose $175 as a reasonable hourly rate for John Bopp, Jr. ("Bopp"), the owner of BC & B, and $150 as a reasonable hourly rate for the other two senior attorneys from BC & B that worked on Plaintiffs' case. Plaintiffs propose $175 as a reasonable hourly rate for John K. Bush ("Bush") of GD & M, who also worked on Plaintiffs' case. Finally, Plaintiffs propose an hourly rate of $125 for all junior-level attorneys who worked on the case.

Initially, the Court notes that all of Plaintiffs' retained counsel, specialized or not, have proposed hourly rates significantly lower than their typical corporate hourly rates. Therefore, any suggestion that Plaintiffs' counsel are attempting to recover a higher, out-of-town rate is without merit. Defendants submitted the declaration of R. Stephen McGinnis ("McGinnis") to counter Plaintiffs' proposed hourly rates. McGinnis, who has practiced near Ashland for 10 years and works at an hourly rate of $125, proposed the following as reasonable market rates for Ashland attorneys:

| | |
|---|---|
| Associate, three years or less experience | $ 95 |
| Senior Associate, 17 to 22 years of experience | $150 |
| Senior Partner, 26 years of experience | $150 |

Even if the Court applies the Ashland market rates to Bopp, a $175 rate would be reasonable. Bopp has six more years

of experience than the "senior partner" in McGinnis's list of proposed rates and has extraordinary expertise. Accordingly, the Court finds that an additional $25 hourly is reasonable even in the Ashland market. Additionally, the $150 rates proposed for Thomas J. Marzen and Richard E. Coleson of BC & B, who both have in excess of 15 years of experience, is directly in line with McGinnis's declaration and, as such, the Court finds them reasonable.

On the other hand, the Court finds that the $175 rate proposed for Bush is excessive in light of the Ashland market rates. Bush has 16 years of experience and has indicated no particular expertise relevant to Plaintiffs' case. For that reason, the Court will apply Ashland market rates to determine a reasonable hourly rate. The Court finds that a $150 hourly rate, which is more in line with Ashland market rates, is a more appropriate figure. Regarding the junior associates who worked on Plaintiffs' case, the reasonable hourly rates must vary based on length of experience. For Christie A. Moore of GD & M as well as Heidi K. Abegg, James R. Mason III, and Moore of BC & B, who have from eight to ten years experience, an hourly rate of $125, equal to that of McGinnis who has ten years of experience, is appropriate. For the remaining junior associates, who have from four to five years of experience, an hourly rate of $110 is more appropriate.

### 2. Reasonable Hours Expended

A fee applicant "has the burden of providing for the court's perusal a particularized billing record." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir.1991). Fee applicants "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Although counsel need not record "in great detail how each minute of his time was expended ... at least counsel should iden-

tify the general subject matter of his time expenditures." *Wooldridge,* 898 F.2d at 1177. In this case, Plaintiffs have satisfied this initial burden. Both firms that represented Plaintiffs provided the Court with itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on Plaintiffs' case.

■ On the other hand, Defendants first argue that Plaintiffs' attorneys' fee award should be reduced to account for Plaintiffs lack of complete success in this case. It is well-established that a district court may reduce a fee award to account for time spent on claims that were unsuccessful. *Hudson v. Reno,* 130 F.3d 1193, 1208 (6th Cir.1997), *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). In *Hensley,* the Supreme Court noted that although "[t]here is no precise rule or formula," district courts may employ either of two options to account for time spent on unsuccessful claims: (1) "identify specific hours that should be eliminated" or (2) "simply reduce the award to account for the limited success." 461 U.S. at 436–37, 103 S.Ct. 1933.

In this case, Plaintiffs challenged the constitutionality of nine separate Kentucky statutes; Plaintiffs' challenges were successful regarding seven statutes and unsuccessful regarding the other two. BC & B stated in its brief that it reduced the total hours expended to account for duplication of efforts and for work spent on unsuccessful claims. A thorough review of BC & B's billing invoices reflects that, although BC & B included the billing nota-

tions for research and conferences related specifically to the two unsuccessful claims, the firm did not charge for this work.[5] The firm additionally omitted *some* charges for time spent drafting pleadings, motions, and briefs to the extent the drafting was attributable to the unsuccessful claims.

■ However, in many other instances, the invoices charge generally for drafting and review of pleadings or motions and do not omit the portion of the charge attributable to the drafting or review for the unsuccessful claims. Also, the Court may fairly presume that at least some of the time spent in discovery was attributable to the two unsuccessful claims. Moreover, no deductions were made from the GD & M invoices to account for work spent on unsuccessful claims. The hours that BC & B deducted for research, conferences, and drafting attributable to work spent on unsuccessful claims made up 2.5% of the total hours expended. Upon a review of the billing invoices, the Court finds that an additional 5% across-the-board deduction from the charges attributable to the underlying claim will more accurately account for time spent on the unsuccessful claims. This deduction will account for time spent on unsuccessful claims during discovery and drafting as well as the time that attorneys at GD & M spent on unsuccessful claims.

Additionally, BC & B claims to have deducted charges to account for duplication of efforts. A thorough examination of the billing invoices reflects just a small amount of duplication of efforts. The Court finds that BC & B has sufficiently

---

5. It is noteworthy that, as indicated in the Court of Appeals opinion in this case, the two statutes that the Court of Appeals found to be constitutional overlapped with one another, to some degree, in terms of issues and arguments. *Id.* In fact, BC & B's billing invoices indicate that research was conducted on these two statutes jointly. Therefore, it is likely that less time was spent on these claims, collectively, than one would otherwise expect if viewing time in terms of the proportion of unsuccessful claims to successful ones.

accounted for duplication of efforts among BC & B attorneys working on Plaintiffs' case by excluding many charges from the total amount on its billing invoices. However, GD & M did not deduct any charges to account for duplicative billing. Accordingly, the Court will reduce the total fees owed to GD & M by 3% to account for the small amount of duplication of efforts apparent when comparing the two attorneys at GD & M with one another and with the attorneys at BC & B. *See Northcross v. Bd. of Educ. of the Memphis City Schools,* 611 F.2d 624, 637 (6th Cir.1979)(stating that the "fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services . . . seems preferable to an attempt to pick out . . . the hours which were duplicative").

 Finally, although the hours expended preparing and litigating fee petitions are compensable, the compensable hours are limited to 3% of the hours expended in the underlying case when the issue is decided on submission and 5% where a trial on the fee issue is necessary. *Coulter,* 805 F.2d at 151. Because a trial on the fee issue is not necessary, the Court will limit the compensable hours spent on the fee issue to 3% of the hours expended on the main case. The total hours spent on the underlying case between both firms was 1350.25 hours.[6] The total hours expended on the fee issue was 61.25 hours. However, to account for the 3% cap, Plaintiffs may only recover for the first 40 hours expended on the fee issue, resulting in a fee amount of $4456.25 owed for work attributable to the fee issue.

***

6. BC & B did not include the hours expended by GD & M when calculating the 3% cap in this case. However, because the hours expended by GD & M may properly be considered hours spent on the underlying case, they should be considered in calculating the 3%

## D. Additional Claimed Expenses

### 1. Travel Expenses

Defendants assert that either Plaintiffs should not recover travel expenses or attorney travel should be billed at a lower hourly rate. In support of this assertion, Defendants note that, in other Circuits, travel expenses are only recoverable where the fee applicant shows "that local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney" who incurs costs traveling from home to the work site. *In re Segal,* 145 F.3d 1348, 1353 (D.C.Cir.1998); *see also, e.g., Ackerley Comm. of Mass., Inc. v. City of Somerville,* 901 F.2d 170, 171 n. 3 (1st Cir.1990). Additionally, Sixth Circuit authority indicates that district courts may reduce the hourly rate for travel hours or may eliminate time billed for travel. *See, e.g., Perotti,* 935 F.2d at 764; *Schroeder v. Woodhaven Sch. Dist.,* 1989 WL 25823, at *2 (6th Cir. Mar.20, 1989).

 However, the Sixth Circuit has clearly left this matter within the discretion of the court and has not stated that travel time is not fully compensable. *Perotti,* 935 F.2d at 764 ("We believe that matters of this sort are within the discretion given the district court, which has greater familiarity with local practice than does this court.") Because the Court applied Ashland market rates to the attorneys who worked on Plaintiffs' case, Plaintiff may recover travel expenses and may recover fees for travel time at the ordinary hourly rate.

***

cap. Further, because this calculation considers the number of hours expended rather than the amount of fees owed, the Court will consider the total hours *actually* expended rather than the hours for which BC & B actually charged.

## 2. Computer Assisted Legal Research Expenses

Defendants next argue that Plaintiffs may not recover for expenses incurred as a result of computer assisted legal research. This Court, citing unpublished Sixth Circuit authority, previously ruled that costs incurred from computer assisted legal research are not recoverable. *King v. Floyd County Bd. of Educ.*, 5 F.Supp.2d 504, 509 (E.D.Ky.1998) (citing *Texler v. County of Summit Bd. of Mental Retardation & Developmental Disabilities*, 1994 WL 252938 (6th Cir. June 8, 1994), *overruled on other grounds*, 228 F.3d 622 (6th Cir.2000)). Plaintiffs argue that the Court should adopt the reasoning of other district courts within the Sixth Circuit that have allowed recovery for computer assisted research costs. *See, e.g., Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 262 F.Supp.2d 804, 817 (W.D.Mich.2003); *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1023–24 (N.D.Ohio 1997). However, until the Sixth Circuit speaks definitively on this issue, the Court finds no reason to disturb its prior ruling. Accordingly, the Court will deduct computer assisted research costs in the amount of $3,257.21 from Plaintiffs' total claimed costs.

## E. Application of the Lodestar Method

When applying the lodestar method based on the reasonable hourly rates previously adopted by the Court, Plaintiffs are entitled to recover a total of $173,266.17 in attorneys' fees and costs. $165,704.98 of this total represents the $155,039.56 attorneys' fees owed to BC & B[7] plus $10,665.42 in BC & B's out-of-pocket costs. $7561.19 of the total represents the $7049.50 attorneys' fees owed to GD & M[8] plus $511.69 in out-of-pocket costs.

## F. Hours Expended Beyond the Sixth Circuit Appeal

The Registry Defendants state that, on January 24, 2004, they decided not to seek reconsideration of the Sixth Circuit's decision, which was favorable to Plaintiffs, and chose not to petition the United States Supreme Court for certiorari. As a result, the Registry Defendants argue that they should not be held responsible for any of Plaintiffs' attorneys' fees that accrued after the Sixth Circuit rendered its decision in this case. None of the parties cite any authority from any Circuit addressing this issue. The Court additionally is aware of no authority on point in this or other Circuits, seemingly making this a case of first impression on this issue.

This Court agrees that the Registry Defendants should not be responsible for payment of the attorneys' fees that accrued in litigating this case at the Supreme Court level where the Registry Defendants played no role in pursuing Supreme Court review and, in fact, voted against it. Plaintiffs correctly argue that the Registry Defendants may have benefitted from a Supreme Court ruling in favor of the other Defendants. However, this argument ignores the fact that the Registry Defendants had no control whatsoever over whether Plaintiffs incurred attorneys' fees beyond the Sixth Circuit decision date. The Court finds that the Registry

---

7. The attorneys' fees attributable to the underlying claim was $158,508.75 from which the Court deducted 5% [$7925.44] to account for Plaintiffs' limited success, resulting in a total of $150,583.31. This amount was added to the $4456.25 attorneys' fees attributable to the time expended on the fee issue itself, resulting in a total fee owed to BC & B of $155,039.56.

8. The attorneys' fees owed to GD & M was $7662.50 from which the Court deducted 8% [$613.00] to account for duplicative billing and Plaintiffs' limited success, resulting in a total fee owed to GD & M of $7049.50.

Defendants should not be held responsible for fees, the accrual of which the Registry Defendants did everything in their power to prevent.

On the other hand, the Court does not agree with the Registry Defendants that they should not be responsible for any fees that accrued after January 16, 2004. First, the appropriate date beyond which the Registry Defendants should not be responsible is the date on which they met and decided not to seek additional review—January 24, 2004—rather than the earlier date on which the Sixth Circuit rendered its decision. Second, the Registry Defendants should be held responsible for Plaintiffs' attorneys' fees incurred in litigating the fee issue itself, which accrued after January 24, 2004, and were unrelated to the Supreme Court litigation.

Finally, on April 30, 2004, pursuant to the Sixth Circuit mandate, this Court ordered Plaintiffs to submit an Amended Judgment that conformed with the Sixth Circuit's opinion. The Registry Defendants participated in the litigation surrounding Plaintiffs' submitted Amended Judgment. Accordingly, the Registry Defendants will be responsible for the fees that Plaintiffs incurred during that time. The Court, therefore, will reduce the amount owed by the Registry Defendants by the amount of fees related to the underlying claim that accrued after January 24, 2004, less fees that accrued in litigating the Amended Judgment issue, resulting in a total reduction of $22,930.62.[9] Applying the same reasoning to the imposition of out-of-pocket expenses, the Registry Defendants are also entitled to a $601.21 re-

duction in expenses that Plaintiffs incurred as a result of the Supreme Court litigation.

### G. Apportionment of Fees Among Defendants

This litigation proceeded with two defined sets of Defendants: (1) the Registry Defendants—comprised of individuals serving on the Kentucky Registry of Election Finance in their official capacities and (2) the remaining Defendants—comprised of County Attorneys, the Attorney General, Commonwealth Attorneys, and individuals serving on the Board of Elections in their official capacities. In fact, even in the submissions regarding the instant fee petition, Defendants continue to group themselves in these two distinct groups.

■ On the other hand, the Court finds that a five-way apportionment is the best method of apportionment under these circumstances. Although all Defendants are government entities, it is reasonable to assume that payment of the attorneys' fees will affect different budgets within the Commonwealth. Furthermore, the Registry Defendants should not be forced to bear a larger percentage of the attorneys' fees merely because they sought separate representation. Accordingly, the Court will apportion the attorneys' fees among the five Defendants: the Commonwealth Attorneys, the County Attorneys, the Attorney General, the Board of Elections Defendants, and the Registry Defendants, with the exception that the Registry Defendants' portion will be reduced by the amount discussed in Section III.F. of this Order, with such reduction distributed equally among the other four Defendants.[10]

---

**9.** In this reduction, the Court must account for the 5% deduction that applied to fees related to the underlying claim to account for Plaintiffs' limited success. The total fee that accrued after January 24, 2004, was $25,037.50 from which the Court deducted the $900 that accrued in litigating the Amended Judgment issue, resulting in a total of

$24,137.50. From that amount, the Court deducted 5% [$1206.88] to account for Plaintiffs' limited success, resulting in a total reduction of $22,930.62.

**10.** Because the dollar amounts did not divide evenly among the non-Registry Defendants, two non-Registry Defendants, whom the

## IV. CONCLUSION

Accordingly, **IT IS ORDERED**

(1) that Plaintiffs' petition for attorneys' fees [Record No. 104] be, and the same hereby is, **GRANTED**;

(2) that Plaintiffs' petition for attorneys' fees [Record No. 100] be, and the same hereby is, **DENIED AS MOOT**;

(3) that the Registry Defendants pay to Plaintiffs $29,946.87, which represents $1512.24 in fees and costs owed to GD & M and $28,434.63 owed to BC & B; and

(4) that the Board of Elections pay to Plaintiffs $35,829.82, which represents $1512.23 in fees and costs owed to GD & M and $34,317.59 owed to BC & B;

(5) that the Commonwealth Attorneys pay to Plaintiffs $35,829.82, which represents $1512.24 in fees and costs owed to GD & M and $34,317.58 owed to BC & B;

(6) that the County Attorneys pay to Plaintiffs $35,829.83, which represents $1512.24 in fees and costs owed to GD & M and $34,317.59 owed to BC & B; and

(7) that the Attorney General pay to Plaintiffs $35,829.83, which represents $1512.24 in fees and costs owed to GD & M and $34,317.59 owed to BC & B.

Court randomly chose, will pay one cent more each than the other two non-Registry Defen-